IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | CV. NO. 11-00257 DAE-RLP |
| Plaintiff, ) ) | |
| vs. ) ) | |
| GLOBAL HORIZONS, INC. D/B/A GLOBAL HORIZONS MANPOWER, INC.; CAPTAIN COOK COFFEE COMPANY LTD.; DEL MONTE FRESH PRODUCE (HAWAII), INC.; KAUAI COFFEE COMPANY, INC.,; KELENA FARMS, INC.; MAC FARMS OF HAWAII, LLC N/K/A MF NUT CO., LLC; MAUI PINEAPPLE COMPANY, LTD. A/K/A MAUI PINEAPPLE FARMS; ALEXANDER & BALDWIN, INC.; MASSIMO ZANETTI BEVERAGE USA, INC.; AND DOES 1–15, INCLUSIVE ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |
| _____ ) | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION TO STAY; (2) GRANTING DEFENDANTS' MOTIONS TO DISMISS
AND (3) DISMISSING THE FIRST AMENDED COMPLAINT WITHOUT
<u>PREJUDICE AS TO THE MOVING DEFENDANTS</u>

On October 26, 2011, the Court heard Plaintiff's Motion to Stay and

Moving Defendants' Motions to Dismiss.  Sue J. Noh, Esq., Michael J. Farrell,

Esq., and Lorena Garcia Bautista, Esq., appeared on behalf of Plaintiff Equal

Employment Opportunity Commission ("Plaintiff" or EEOC");  Amanda Marie

Jones, Esq., and Kristin S. Shigemura, Esq., appeared on behalf of Defendant

Captain Cook Coffee Company Ltd. ("Captain Cook"); David W.H. Chee, Esq.,

appeared on behalf of Defendant Del Monte Fresh Produce (Hawaii) ("Del

Monte"); Gerald L. Maatman, Jr., Esq., and Mark J. Bennet, Esq., appeared on

behalf of Defendant Kauai Coffee Company, Inc. ("Kauai Coffee"); Sarah O.

Wang, Esq., appeared on behalf of Defendant Kelena Farms, Inc. ("Kelena

Farms"); Barbara A. Petrus, Esq., appeared on Behalf of Defendant Mac Farms of

Hawaii, LLC ("Mac Farms"); Christopher S. Yeh, Esq., appeared on behalf of

Maui Pineapple Company, Ltd., ("Maui Pineapple"); and Gerald L. Maatman, Jr.,

Esq., appeared on behalf of Defendants Alexander & Baldwin, Inc. ("A&B") and

Massimo Zanetti Beverage USA, Inc. ("MZB").    After reviewing the Motions and

the supporting and opposing memoranda, the Court **GRANTS IN PART** and

**DENIES IN PART** Plaintiff's Motion to Stay (Doc. # 109) and **GRANTS** Captain

Cook, Del Monte, Kauai Coffee, Kelena Farms, Mac Farms, Maui Pineapple,

A&B, and MZB's (collectively "Moving Defendants") Motions to Dismiss (Docs.

## 20, 22, 29, 39, 46, 48, 58, 59).

<u>BACKGROUND</u>

I.   <u>Criminal Case</u>

On September 1, 2010, a Grand Jury indicted various employees of

Global Horizons, Inc. ("Global") on charges of human trafficking.  <u>United States v.</u>

<u>Orian et al.</u>, No. 10-576 (D. Haw. filed Sept. 1, 2010).  A First Superseding

Indictment was issued on January 12, 2011.  <u>Id.</u> at Doc. # 112.  The individuals

indicted include Global's CEO Mordechai Orian and former Global employees

Pranee Tubchumpol, Shane Germann, Sam Wongsesanit, Ratawan Chunharutai,

Podjanee Sinchai, Bruce Schwartz, and Joseph Knoller ("Criminal Defendants").

<u>Id.</u>  The criminal matter is set for trial on February 7, 2012.

II.   <u>Civil Case</u>

On April 19, 2011, EEOC filed the instant action for recovery

pursuant to Title VII of the Civil Rights Act of 1964 and Title 1 of the Civil Rights

Act of 1991 to correct allegedly unlawful employment practices on the basis of

national origin, race, and retaliation.  Plaintiff claims that Defendants engaged in

discrimination and a pattern or practice of discrimination when they subjected

Marut Kongpia, Nookrai Matwiset, Jakarin Phookhien, Mongkol Bootpasa,

Janporn Suradanai, Suthat Promnonsri, Itthi Oa-Sot, and a class of similarly

situated Thai and Asian individuals (collectively "Claimants") to harassment,

disparate treatment, retaliation, and constructive discharge on the basis of the

Claimants' national origin and race.  (See "FAC," Doc. # 12.)

The majority of the alleged misconduct stems from the conduct of

Defendant Global Horizons, Inc.[1] ("Global").  The First Amended Complaint

("FAC") alleges that Global "with the help of the agricultural companies and farms

with which it contracted" engaged in a pattern or practice of misconduct against

Claimants based on their national origin and race.  (Id. ¶ 40a.)  Specifically,

Plaintiff alleges that "Global targeted economically-vulnerable Asian men from

Thailand" and "promised [them] working conditions that complied with U.S. law

in exchange for exorbitant recruiting fees."  (Id.)  Global allegedly "harassed and

intimidated the Claimants on a regular basis" and "threatened the Claimants with

deportation, arrest, suspension, and/or physical violence."  (Id.)  According to

Plaintiff, Global "unlawfully confiscated the Claimants' identification documents"

---

[1] Global has not made an appearance in these proceedings.  As the Court understands, many of Global's officers and employees now face criminal charges for the misconduct alleged here.  See United States v. Orian, et al., Cr. No 10-00675 SOM (D. Haw.).

and "subjected the Claimants to uninhabitable housing, insufficient food and kitchen facilities, inadequate pay, significant gaps in work, visa and certification violations, suspension, deportation and/or physical violence." (Id.)  These "intolerable working conditions . . . resulted in constructive discharge." (Id.) Plaintiff claims that these conditions created a hostile work environment and that the Claimants were subject to these conditions because of their national origin and race.  (Id. ¶ 40(a),(b).)

Plaintiff also alleges that when the Claimants complained of the unlawful employment practices alleged, "Global threatened the Claimants with deportation, arrest, suspension, and/or physical violence" and "subjected the Claimants to harassment, significant gaps in work, visa and certification violations, suspension, deportation, and/or physical violence." (Id. ¶ 41(a).)

As a result of this alleged misconduct, Plaintiff claims that Global violated Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a), 200e-3(a).  (Id. ¶¶ 40, 41.)

Plaintiff's theory of liability with respect to the Moving Defendants is more attenuated.  Plaintiff claims that each Moving Defendant, with the exception of MZB, "has continuously been under contract with Defendant Global for services rendered in Hawaii, and has continuously been a joint employer with Defendant

4

Global where both generally controlled the terms and conditions of the employment" of the Claimants.[2]   (Id. ¶¶ 8, 11, 14, 17, 20, 23, 26.)  Plaintiff then claims that each Moving Defendant "either engaged in, knew of, or should have known of the unlawful employment practices and pattern or practice of such unlawful acts" which Plaintiff alleges Global committed.  (Id. ¶¶ 42–57.)

III.   Procedural History

        On April 19, 2011, Plaintiff filed its initial Complaint.  (Doc. # 1.)  On July 15, 2011, Plaintiff filed its First Amended Complaint.  (Doc. # 12.)  On July 19, 2011, Kauai Coffee filed its Motion to Dismiss.  ("Kauai MTD," Doc. # 20.)  On July 22, 2011, Captain Cook filed its Motion to Dismiss.  ("Cook MTD," Doc. # 22.)  On August 5, 2011, Maui Pineapple filed its Motion to Dismiss.  ("Maui MTD," Doc. # 29.)  On August 8, 2011, Kelena Farms filed its Motion to Dismiss.  ("Kelena MTD," Doc. # 39.)  On August 12, 2011, Mac Farms filed its Motion to Dismiss.  ("Mac MTD," Doc. # 46.)  On August 15, 2011, Del Monte filed its Motion to Dismiss.  ("Del MTD," Doc. # 48.)  On September 6, 2011, Plaintiff filed an Opposition to Kauai Coffee's Motion to Dismiss ("Kauai

_____

[2] Plaintiff's claim with respect to MZB is derivative of the alleged liability of Kauai Coffee and A&B because, according to Plaintiff, MZB "acquired certain assets of Defendant Kauai Coffee, which was formerly a subsidiary of Defendant [A&B]."  (Id. ¶ 29.)

Opp'n," Doc. # 55) and an Opposition to Captain Cook's Motion to Dismiss

("Cook Opp'n," Doc. # 56).  On September 7, 2011, the Court issued an Order

unifying the briefing schedule for Moving Defendants' Motions to Dismiss.  (Doc.

# 57.)  On September 19, 2011, A&B filed its Motion to Dismiss ("A&B MTD,"

Doc. # 58.)  The same day, MZB filed its Motion to Dismiss.  ("MZB MTD," Doc.

# 59.)  On September 26, 2011, Plaintiff filed an Opposition to: (1) Maui

Pineapple's Motion to Dismiss ("Maui Opp'n, Doc. # 64); (2) Mac Farm's Motion

to Dismiss ("Mac Opp'n," Doc. # 65); (3) Del Monte's Motion to Dismiss ("Del

Opp'n," Doc. # 66); and (4) Kelena Farm's Motion to Dismiss ("Kelena Opp'n,"

Doc. # 67).  The same day, each of the Moving Defendants filed Statements of No

Opposition to each other's Motions.[3]  (Docs. ## 68–73.)  On October 3, 2011, Mac

Farms filed a Reply in support of its Motion to Dismiss.  ("Mac Reply," Doc.

# 87.)  The same day, Maui Pineapple filed a Response in support of its Motion to

Dismiss.  ("Maui Reply," Doc. # 90.)  Kauai Coffee, Captain Cook, Del Monte,

---

[3] Mac Farms included in its Statement of No Opposition a discussion of temporal limitations established by Section 706 and arguably 707 of Title VII. (Doc. # 68 at 2–9.)  This, in turn, prompted the EEOC to file a motion requesting that this Court either strike Mac Farms' statement or provide it the opportunity to file a sur-reply. (Doc. # 95.)  On October 13, 2011, the Court denied the EEOC's motion because Mac Farms made clear that it was not seeking to raise a new argument with respect to its own Motion in its Statement of No Opposition.  (See Doc. # 108.)

and Kelena Farms also filed their Reply briefs.  ("Kauai Reply," Doc. # 89; "Cook Reply," Doc. # 91; "Del Reply," Doc. # 92; "Kelena Reply," Doc. # 94.)  On October 5, 2011, Plaintiff filed its Opposition to MZB's Motion to Dismiss and A&B's Motion to Dismiss.  ("MZB Opp'n," Doc. # 96; "A&B Opp'n," Doc. # 99.)  On October 12, 2011, A&B and MZB filed their Replies.[4]  ("A&B Opp'n," Doc. # 104; "MZB Opp'n," Doc. # 106.)

On October 20, 2011, EEOC Attorneys Anna Park, Sue Noh, and Lorena Garcia-Bautista met with U.S. Attorney Florence Nakakuni and Robert J. Moossy and Daniel H Weiss from the Criminal Section of the U.S. Department of Justice, Civil Rights Division.  (Doc. # 109-2.)  The prosecution team asked the EEOC to file the instant motion to stay this case and to stay discovery pending resolution of the criminal matter to ensure that the criminal prosecution would not be frustrated by any abuse of civil discovery in the criminal matter and ultimately to ensure the public's interest in the proper prosecution of the criminal matter.  (Id.)

Pursuant to that request, EEOC filed the instant Motion to Stay on October 21, 2011.  (Doc. # 109.)  On October 24, 2011, the Moving Defendants

---

[4] A&B, MZB, and Kauai Coffee also filed objections to the exhibits Plaintiff filed with its Oppositions to their Motions to Dismiss.  (See Docs. ## 88, 105, 107.)

submitted briefs in Opposition to the Motion to Stay.  (Docs. ## 111–112,

113–116.)  On October 25, 2011, EEOC filed a Reply in support of its Motion to

stay.  (Doc. # 118.)

As of the date of this Order, Defendant Global has not made an

appearance in this action.

STANDARD OF REVIEW

I.      <u>Motion to Stay</u>

"The Constitution does not ordinarily require a stay of civil

proceedings pending the outcome of criminal proceedings."  <u>Keating v. Office of

Thrift Supervision</u>, 45 F.3d 322, 324 (9th Cir. 1995) (citing <u>Fed. Sav. & Loan Ins.

Corp. v. Molinaro</u>, 889 F.2d 899, 902 (9th Cir. 1989).  "In the absence of

substantial prejudice to the rights of the parties involved, simultaneous parallel

civil and criminal proceedings are unobjectionable under our jurisprudence."  <u>Id.</u>

(internal quotation marks and citation omitted).  Nonetheless, a Court has the

inherent discretion to stay civil proceedings "when the interests of justice seem to

require such action."  <u>Id.</u>  (internal quotation marks and citation omitted).

"The decision whether to stay civil proceedings in the face of a

parallel criminal proceeding should be made 'in light of the particular

circumstances and competing interests involved in the case.'"  <u>Id.</u> (quoting

8

Molinaro, 889 F.2d at 902).  In making this determination, the court "should consider the extent to which the defendant's fifth amendment rights are implicated."  Id. (internal quotation marks and citation omitted).  Additionally, the court should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.  Id. at 325.

II.     Motions to Dismiss

    A.     Federal Rule of Civil Procedure 12(b)(6)

        Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Review is limited to the contents of the complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994).  A complaint may be dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim."  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir.

1984) (citation omitted).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted).  Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

10

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.   See Twombly, 550 U.S. at 570.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief.  Id. at 586.  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. at 558 (citation omitted).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect" (internal quotations and citations omitted)).

B.    Federal Rule of Civil Procedure 8

Federal Rule of Civil Procedure 8 mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that each allegation "be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  A complaint that is so confusing that its "'true substance, if any, is well disguised'" may be dismissed for failure to satisfy Rule 8.  Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting Gillibeau v. City of Richmond, 417 F.2d 426, 431 (9th Cir. 1969); see also McHenry v. Renne, 84 F.3d 1172, 1180 (9th Cir.

11

1996) ("Something labeled a complaint but written . . . , prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."); Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint which fails to comply with [Rule 8] may be dismissed with prejudice[.]").

Put slightly differently, a complaint may be dismissed for failure to comply with Rule 8 where it fails to provide the defendants fair notice of the wrongs they have allegedly committed.  See McHenry, 84 F.3d at 1178–80 (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); cf. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling").  Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 129 S. Ct. at 1949 (citations and quotations omitted).  "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit."  McHenry, 84 F.3d at 1179.

The court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. Legal conclusions must be supported by factual allegations. Id. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

## DISCUSSION

I.   Motion to Stay

Plaintiff EEOC moves to stay this action and stay discovery pending the conclusion of the criminal proceedings involving employees of Defendant Global. Specifically, EEOC contends that the substantial overlap between the criminal case and the civil case as well as the opportunity for the Criminal Defendants to abuse the broad scope of civil discovery to improperly gain advantage in the criminal proceedings counsel in favor of a stay. The Moving Defendants, however, oppose the Motion to Stay on the grounds that further delay of the civil proceedings will unduly prejudice the Moving Defendants and EEOC has not established that the government will suffer hardship if a stay is denied. Upon consideration of the Keating factors set forth above, the Court concludes that

a stay should be granted with respect to Defendant Global and denied with respect to the Moving Defendants.

First, there is no indication that the Criminal Defendants' Fifth Amendment rights are implicated by the civil proceedings. None of the Criminal Defendants are named Defendants in the civil action, nor is there any indication that any of the Criminal Defendants intend to invoke their Fifth Amendment rights. Further, the only Defendant in this action with whom the Criminal Defendants have any established ties is Defendant Global, who has not even made an appearance in this case.[5] Thus, the Criminal Defendants' Fifth Amendment rights are only potentially implicated by the civil proceedings against Global.

Second, under <u>Keating</u>, the Court must consider "the interest of the plaintiffs in proceeding expeditiously with this litigation." <u>Keating</u>, 45 F.3d at 325. However, <u>Keating</u> involved the typical situation where a defendant seeks to stay the action, thus calling into question the effect of the proposed stay on the party opposing the stay, i.e., the plaintiffs. <u>Id.</u> at 326. Here, by contrast, it is the Plaintiff asking for the stay. The relevant inquiry therefore concerns the effect of the proposed stay on the Defendants.

─────────────────────

[5]The Court notes that Global was served on July 21, 2011. (Doc. # 26.) Thus, Global's responsive pleading was due on August 11, 2011. Fed. R. Civ. Proc. 12(a)(1)(A). To date, Global has not filed a responsive pleading.

14

The Court finds that the Moving Defendants have a substantial interest in proceeding expeditiously with this litigation.  The allegations in the FAC involve events that allegedly occurred as far back as 2003, approximately eight years ago.  (FAC ¶¶ 40–57.)  At least one of the Moving Defendants contends that it has since shut down operations and let go of former employees.  (Doc. # 112.)  Thus, further delay may preclude the presentation of evidence at trial as a result of stale memories, the inability to locate witnesses, and lost, inaccessible, or stale evidence.  Additionally, in light of the seriousness of the discrimination allegations and the substantial publicity surrounding both the civil and criminal case, the Moving Defendants have a compelling interest in resolving this matter as soon as possible.  Accordingly, the Court finds that the potential prejudice to the Moving Defendants if this matter were delayed weighs against granting a stay.

Third, the burden that the civil proceedings may impose on the Criminal Defendants is unclear and speculative at best.  Plaintiff contends that the Criminal Defendants are entitled to avoid having to disclose their defense strategies in the related civil case.  However, since the Criminal Defendants are not parties to the civil case, there is no reason to believe that they would be forced to expose their defense strategies in this action.  This is particularly true in light of the fact that Global, the Criminal Defendants' purported former employer, has not yet

15

made an appearance in this case.  Additionally, Plaintiff has not shown that the Criminal Defendants would be burdened if the civil action were allowed to proceed with respect to the Moving Defendants, who are not implicated in the criminal case.

Fourth, with respect to the convenience of the Court in the management of its cases and the efficient use of judicial resources, Plaintiff contends that "[i]ssues common to both cases may be resolved in the criminal proceeding, thereby streamlining the civil action."  (Doc. # 109 at 10.)  However, with respect to the Moving Defendants, the principles of <u>res judicata</u> would not apply because none of them are parties in the criminal case.  Further, Plaintiff does not identify any issues with respect to the allegations against the Moving Defendants that will be resolved in the criminal proceeding.  Accordingly, the Court finds that Plaintiff has not shown that staying the case with respect to the Moving Defendants would not promote judicial efficiency.

With respect to Global, however, the Court observes that there may be some overlap between the issues surrounding the allegations against Global in the civil action and the allegations against Global employees in the criminal action. Nonetheless, since this factor does not clearly way in either direction, the Court considers it to be neutral with respect to Global.

16

Fifth, as to the interests of persons not parties to the civil action, Plaintiff argues that the Department of Justice has a strong interest in ensuring that the criminal prosecution not be frustrated by any abuse of civil discovery in the criminal matter.  However, since Global has not even made an appearance in the civil action, it is entirely speculative to assert that Global will improperly use the civil discovery process to support the criminal defense of its personnel.  Further, there is no indication that discovery with respect to the Moving Defendants will implicate the concerns of the Department of Justice.

As to the sixth and final factor, the public has a clear interest in the speedy resolution of the civil action.  See, e.g., Keating, 45 F.3d at 326 (holding that any burden on the defendant was "far outweighed by the public interest in a speedy resolution of the case").  The public also has a strong interest in the proper prosecution of the Criminal Defendants.  However, Plaintiff has failed to demonstrate that the latter interest would be compromised if a stay were denied.  Accordingly, this factor weighs against granting a stay.

The Court therefore concludes, based on the factors set forth in Keating, that the stay should be denied with respect to the Moving Defendants.  Simply stated, Plaintiff has not demonstrated any compelling reason for staying

17

these proceedings with respect to the Moving Defendants, who have little, if any, connection with the criminal proceedings.

With respect to Global, on the other hand, the Court concludes that a stay is warranted. As a preliminary matter, the Court notes that Global has not made an appearance in these proceedings or filed an opposition to the Motion to Stay. Further, the relationship between Global and the Criminal Defendants is substantially less attenuated. Thus, as discussed above, the Criminal Defendants' Fifth Amendment rights may be implicated by the civil proceedings against Global.

Accordingly, the Court hereby **DENIES** the Motion to Stay with respect to the Moving Defendants and **GRANTS** the Motion to Stay with respect to Defendant Global. The Court notes, however, that it will revisit the stay if and when Defendant Global files an appearance and moves to lift the stay.

II.     Motions to Dismiss

A.     The EEOC and Title VII

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") prohibits employers from discriminating against an employee based on race, color, religion, sex, or national origin. Id. § 2000e-2. Title VII also makes

18

it unlawful for an employer to retaliate against an employee because he has taken an action to enforce his rights under Title VII.  Id. § 2000e-3.

The EEOC may assert claims pursuant to §§ 706 and 707 of Title VII, 42 U.S.C. §§ 2000e-5 and 2000e-6.  Section 706 allows the EEOC to sue on behalf of one or more "persons aggrieved" by an unlawful employment practice.  42 U.S.C. § 2000e-5(f).  Section 707 allows the EEOC to investigate and act on a charge of a pattern or practice of discrimination.  See id. § 2000e-6.

In order to establish a pattern or practice of discriminatory treatment under § 707, a plaintiff must show "'more than the mere occurrence of isolated or accidental or sporadic discriminatory acts.'"  Obrey v. Johnson, 400 F.3d 691, 694 (9th Cir. 2005) (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 336 (1977)).  Plaintiff must show that the discrimination was the defendant's "'standard operating procedure-the regular rather than the unusual practice.'"  Id. (quoting Teamsters, 431 U.S. at 336).

The Court finds that Plaintiff has failed to allege sufficient facts in support of its Title VII theories of liability against the Moving Defendants. Specifically, the Court finds the FAC lacking sufficient detail with respect to the employment relationship between each of the Moving Defendants and Claimants.

Plaintiff has also insufficiently detailed the Moving Defendants' alleged wrongful conduct.

> B.     Joint Employer Relationship

> 1.     Legal Standards

"One of Congress' objectives in enacting Title VII was 'to achieve equality of employment opportunities . . . .'" Adcock v. Chrysler Corp., 166 F.3d 1290, 1292 (9th Cir. 1999) (quoting Griggs v. Duke Power Co., 401 U.S. 424, 429 (1971)).  Therefore, in order for Title VII protections to apply, "there must be some connection with an employment relationship."  Anderson v. Pac. Mar. Ass'n, 336 F.3d 924, 930 (9th Cir. 2003) (citing Lutcher v. Musicians Union Local 47, 633 F.2d 880, 883 (9th Cir. 1980)).  However, that connection need not necessarily be direct.  Id.; E.E.O. C. v. Pac. Mar. Ass'n., 351 F.3d 1270, 1274 (9th Cir. 2003).

An employer may be held liable under Title VII pursuant to a "joint employer" theory of liability.[6]  E.E.O. C., 351 F.3d 1275–77; Torres-Lopez v.

---

[6] To be sure, the joint employer theory of liability is distinct from liability as an indirect employer.  The latter "requires that the employer have 'some peculiar control over the employee's relationship with the direct employer' and that the indirect employer engage in 'discriminatory interference'" with the employees' relationship with their direct employer.  E.E.O. C., 351 F.3d at 1274 (quoting Anderson, 336 F.3d at 932.)  Plaintiff does not appear to allege that the Moving Defendants are liable as indirect employers.  Therefore, the Court need not address this theory of liability here.

May, 111 F.3d 633, 639 (9th Cir. 1997).  "Two or more employers may be considered 'joint employers' if both employers control the terms and conditions of employment of the employee." E.E.O. C., 351 F.3d at 1275.  In joint employer situations, "no finding of a lack of arm's length transaction or unity of control or ownership is required." Id. at 1276.  "[I]t is rather a matter of determining which of two, or whether both, [alleged employers] control, in the capacity of employer, the labor relations of a given group of workers." Id.

To determine whether a joint employment relationship exists, the Ninth Circuit applies an "economic reality test" that takes into account "all factors relevant to the particular situation." Id. at 1275 (citing Bonnette v. California Health and Welfare Agency, 704 F.2d 1465 (9th Cir. 1983)).  For example, the Ninth Circuit has considered whether the alleged joint employer (1) supervised the employee, (2) had the power to hire and fire him, (3) had the power to discipline him, and (4) supervised, monitored and/or controlled his work site. Id. at 1277.

For purposes of determining whether a joint employment relationship exists in the agricultural context, the Ninth Circuit has explained that:

> a grower's ownership of farmland is relevant for the obvious reason
> that without the land, the worker might not have work, and because a
> business that owns or controls the worksite will likely be able to
> prevent labor law violations, even if it delegates hiring and
> supervisory responsibilities to labor contractors.  Similarly, the

21

grower's investment in equipment and facilities is probative of the workers' economic dependence on the person who supplies the equipment or facilities.  Finally, considering whether the farmworkers perform a line-job integral to the grower's business is relevant because a worker who performs a routine task that is a normal and integral phase of the grower's production is likely to be dependent on the grower's overall production process.

Torres-Lopez, 111 F.3d at 640–41 (internal quotation marks and citation omitted).

    2.   Allegations

Plaintiff's allegations in the FAC with respect to the employment relationship between each of the Moving Defendants (except MZB) and the Claimants are as follows:

At all relevant times, [the Moving Defendant] has continuously been under contract with Defendant Global for services rendered in Hawaii, and has continuously been a joint employer with Defendant Global where both generally controlled the terms and conditions of the employment of [the Claimant] and similarly situated individuals.

(Compl. ¶¶ 8, 11, 14, 17, 20, 23, 26.)  Plaintiff's further allege the following with respect to all of the Moving Defendants:

Defendants Alexander & Baldwin, Inc., Captain Cook, Del Monte, Kauai Coffee, Kelena Farms, Mac Farms, Maui Pineapple, and Massimo Zanetti Beverage USA, Inc. (collectively, the "Joint Employers") are persons against whom a right to relief is asserted jointly, severally, or out of the same transaction or series of transactions.  Additionally, questions of law or fact common to all Defendants will arise in this action. Joint Employers are named as parties pursuant to Rule 20(a)(2) of the Federal Rules of Civil Procedure in that Defendant Global and the Joint Employers, at all

relevant times, acted as joint employers and/or successors with regard to the relevant claimants.

(Compl. ¶ 30.)  Plaintiff does not offer any specific facts to support its claim that the Moving Defendants were joint employers.  Plaintiff merely alleges, in conclusory fashion, that each of the Moving Defendants "has continuously been a joint employer with Defendant Global" and that "both generally controlled the terms and conditions of the employment."  These bald allegations, without more, are entirely insufficient to satisfy the basic pleading requirements of Rule 8.  See Iqbal, 129 S. Ct. at 1949 (stating that a complaint that "tenders naked assertions devoid of further factual enhancement" is insufficient to satisfy Rule 8); see also McGlinchy, 845 F.2d at 810 ("conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim").

It is true that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  Plaintiff's unsubstantiated allegations that each of the Moving Defendants is a joint employer constitutes no more than a series of "labels and conclusions."  Indeed, the FAC is completely devoid of any factual

23

allegations regarding the nature of the relationship between each of the Moving

Defendants and the Claimants.  For example, the FAC says nothing about whether

the Moving Defendants supervised or monitored the Claimants, whether they had

the power to hire or fire the Claimants, whether they owned the land on which the

Claimants worked, or whether they supplied equipment or facilities for the

Claimants to use.  In other words, Plaintiffs do not offer any facts that would

inform an evaluation under the economic realities test.[7]

Perhaps recognizing these shortcomings, Plaintiff attempts to cure its

pleading deficiencies by providing additional factual allegations regarding the

alleged joint employment relationships in its briefs in opposition to the pending

Motions to Dismiss.  Plaintiff also attempts to incorporate into its FAC various

documents purportedly demonstrating the existence of joint employment

relationships.  Of course, these allegations and documents cannot be incorporated

into the FAC via an opposition.  See Clegg v. Cult Awareness Network, 18 F.3d

752, 754 (9th Cir. 1994) ("[Rule 12(b)(6) [r]eview is limited to the contents of the

---

[7] The Courts notes that with respect to MZB, Plaintiff asserts a theory of liability that is derivative to that of Defendants A&B and Kauai Coffee.  (Compl. ¶ 29.)  Accordingly, to the extent that the Claimants' relationship with MZB is more attenuated than their relationship with the other Moving Defendants, establishing the requisite employment relationship with respect to MZB may require further factual allegations those necessary to establish a tenable theory of liability as to the other Moving Defendants.

complaint."); <u>BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.</u>, 780 F. Supp. 2d 1061, 1075 n.10 (D. Haw. 2011) (citing <u>Zimmerman v. PepsiCo</u>. 836 F.2d 173, 181 (3d. Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")).  Accordingly, the Court does not consider them in assessing whether the FAC states a plausible claim for relief under Title VII.

Moreover, the Court rejects Plaintiff's contention that certain exhibits attached to its Opposition briefs can be considered under the doctrine of incorporation by reference.  In ruling on a motion to dismiss under Rule 12(b)(6), a court may consider documents that are not physically attached to the complaint only if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them.  <u>Coto Settlement v. Eisenberg</u>, 593 F.3d 1031, 1038 (9th Cir. 2010); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001). <u>But see</u> <u>United States v. Ritchie</u>, 342 F.3d 903, 908–09 (9th Cir. 2003) (holding that mere mention of the existence of a document is insufficient to incorporate by reference the contents of a document).  None of the documents submitted by Plaintiff satisfy this criteria.

Since the allegations in the FAC are insufficient to demonstrate the existence of an employment relationship between each of the Moving Defendants

25

and the Claimants, Plaintiff has failed to state a claim under Title VII against Moving Defendants.

C.     Alleged Wrongful Conduct

In the FAC, Plaintiff alleges causes of action against each Moving Defendant for employment discrimination, hostile work environment, constructive discharge and retaliation.  (FAC ¶¶ 42–57.)  The factual allegations of Moving Defendants' underlying misconduct is insufficient to sustain these claims.

1.     Legal Standards

In order to state a claim for unlawful employment discrimination under Title VII, a plaintiff must show: (1) that they belong to a class of persons protected by Title VII; (2) that the plaintiffs were qualified for their positions and performing their jobs satisfactorily; (3) that they experienced adverse employment actions; and (4) that similarly situated individuals outside of their protected class were treated more favorably, or other circumstances surrounding the adverse employment action giving rise to an inference of discrimination.  Hawn v. Executive Jet Management, Inc., 615 F.3d 1151, 1156 (9th Cir. 2010) (citing Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004)); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

In addition to prohibiting unlawful employment discrimination, Title
VII "guarantees employees 'the right to work in an environment free from
discriminatory intimidation, ridicule, and insult.'"  <u>Davis v. Team Elec. Co.</u>, 520
F.3d 1080, 1095 (9th Cir. 2008) (quoting <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477
U.S. 57, 65 (1986)).  An employer is liable under Title VII for conduct giving rise
to a hostile work environment "where the employee proves (1) that he was
subjected to verbal or physical conduct of a harassing nature, (2) that this conduct
was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to
alter the conditions of the victim's employment and create an abusive working
environment."  <u>Swinton v. Potomac Corp.</u>, 270 F.3d 794, 807 (9th Cir. 2001)
(quoting <u>Pavon v. Swift Transp. Co.</u>, 192 F.3d 902, 908 (9th Cir. 1999)).

An employer may also be held liable under Title VII for constructive
discharge.  <u>Penn. State Police v. Suders</u>, 542 U.S. 129, 143 (2004).  A constructive
discharge claim requires some aggravating factors beyond those required for a
hostile work environment claim.  <u>Brooks v. City of San Mateo</u>, 229 F.3d 917,
930–31 (2000).  To state a claim for constructive discharge under Title VII, a
plaintiff must show that "the working conditions [had] become so intolerable that a
reasonable person in the employee's position would have felt compelled to resign."

Penn. State Police, 542 U.S. at 130; see also Hardage v. CBS Broadcasting, Inc., 427 F.3d 1177, 1184 (9th Cir. 2005).

To state a claim for retaliation under Title VII, a plaintiff must demonstrate that: "(1) the employee engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment decision." Davis v. Team Elec. Co., 520 F.3d 1080, 1093–94 (9th Cir. 2008); Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1197 (9th Cir. 2003).  Conduct constituting a "protected activity" includes filing a charge or complaint, testifying about an employer's alleged unlawful practices, and "engaging in other activity intended to oppose an employer's discriminatory practices." Raad, 323 F.3d at 1197 (citing 42 U.S.C. § 2000e3(a)) (internal quotations omitted).  Meanwhile, "adverse employment action" has been interpreted to mean "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1242–43 (9th Cir. 2000) (adopting the EEOC test for determining whether an act constitutes an "adverse employment action," as set forth in EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008 (1998)).

28

2.    <u>Allegations</u>

Plaintiff's allegations of Moving Defendants' misconduct are

insufficient to support its claims of employment discrimination, hostile work

environment, and retaliation.  Plaintiff alleges that each Moving Defendant

> either engaged in, knew or should have known of the unlawful
> employment practices and pattern or practice of such unlawful acts
> alleged [with respect to Global] that occurred at or around its Hawaii
> location and/or Global's California location[.]

(FAC ¶¶ 42–57.)

This bald assertion with respect to each Moving Defendant is wholly

insufficient to survive Moving Defendants' Motions to Dismiss.  As a preliminary

matter, it is unclear to the Court whether each Moving Defendant either engaged

in, knew, or should have known of the misconduct Plaintiff alleged Global

committed.  For instance, did Del Monte engage in the misconduct?  Was Del

Monte aware that the misconduct happened?  Or should Del Monte merely have

known that Global was engaging in this misconduct.  The same question can be

posited with respect to each Moving Defendant.  Neither the Court nor Moving

Defendants are required to speculate as to the misconduct in which Plaintiff alleges

Moving Defendants engaged.  <u>See</u> <u>McHenry</u>, 84 F.3d at 1178–80 (affirming

dismissal of complaint where "one cannot determine from the complaint who is

29

being sued, for what relief, and on what theory, with enough detail to guide

discovery"); Sakugawa v. Countrywide Bank F.S.B., 769 F. Supp. 2d 1211,

1221(D. Haw. 2011) ("Although FRCP Rule 8 requires only that a complaint

include a 'short and plain statement of the claims showing that the pleader is

entitled to relief,' the complaint must sufficiently put Defendants on fair notice of

the claim asserted and the ground upon which it rests. [Neither] Defendants, nor

the Court, are required to speculate . . . .").

        Moreover, Plaintiff has provided no facts in the FAC to flesh out this

allegation.  For instance, to what extent and under what circumstances did the

Moving Defendants engage in the misconduct that Plaintiff alleged against Global.

Similarly, assuming a Moving Defendant should have known about Global's

misconduct, it is unclear: (1) what specifically they should have known; (2) why

should they have known it; and (3) how they could have known it.  In other words,

there is a complete paucity of factual allegations in the FAC supporting the

allegations that Moving Defendants "engaged in, knew, or should have known of

the unlawful employment practices."  This thread-bare allegation is insufficient to

withstand Moving Defendants' Motions to Dismiss.  McGlinchy, 845 F.2d at 810

("[C]onclusory allegations without more are insufficient to defeat a motion to

dismiss for failure to state a claim.").  Plaintiff has not even alleged a formulaic

recitation of the elements of a cause of action, though even if it had, that also would be insufficient.  Iqbal, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (citations and quotations omitted)).

The Court notes that Plaintiff's failure to sufficiently allege that Moving Defendants' engaged in any wrongdoing relates closely to Plaintiff's failure to allege the nature of the employment relationship between Global, Claimants, and Moving Defendants.  Specifically, the degree to which Plaintiff must allege the facts and circumstances relating to Moving Defendants' misconduct will depend on the nature of the allegations with respect to the joint employment relationship.[8]  As it stands, because this Court does not have any factual allegations before it with respect to the nature of the employment relationship between Global, Claimants, and Moving Defendants, the Court can

---

[8] The Court notes that it is not currently in a position to speak to the sufficiency of the misconduct alleged against Global in the FAC.  Global has not made an appearance in these proceedings, and Moving Defendants have not demonstrated to this Court that they have standing to seek dismissal of the claims against Global on Global's behalf.

only conclude that the allegations of misconduct against Moving Defendants are insufficient.[9]

    D.    <u>Statute of Limitations</u>

        Plaintiff asserts its claims pursuant to §§ 706 and 707 of Title VII, 42 U.S.C. §§ 2000e-5 and 2000e-6.  (FAC ¶ 1 ("This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) and 707 of Title VII of the Civil Rights Acts of 1964.").)  Section 706 allows the EEOC to sue on behalf of one or more "persons aggrieved" by an unlawful employment practice.  42 U.S.C. § 2000e-5(f).  Pursuant to § 706, the aggrieved individual must first file a charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred."  <u>See</u>  <u>id.</u> § 2000e-5(e)(1).  Alternatively, the aggrieved individual may file a charge within 300 days after the alleged unlawful employment practice occurred if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto."  <u>Id.</u>

        Section 707 allows the EEOC to investigate and act on a charge of a pattern or practice of discrimination.  <u>See</u> <u>id.</u> § 2000e-6.  Subsection (e) of § 707,

---

[9] The Court notes that once again, Plaintiff seemingly attempts to amend the FAC in its Oppositions to the Motions for Summary Judgment.  This is not permitted.  <u>See</u> <u>BlueEarth Biofuels</u>, 780 F. Supp. 2d at 1075 n.10.

entitled "Investigation and action by Commission pursuant to filing of charge of discrimination," provides that "the [EEOC] shall have authority to investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved by a member of the Commission.  All such actions shall be conducted in accordance with the procedures set forth in [Section 706.]"  Id. § 2000e-6(e) (emphasis added).

Many of the Moving Defendants in their Motions argue that the scope of the alleged misconduct for which they are purported to be liable should be temporally limited to the 180 days prior to the Claimants filing with the EEOC. Specifically, the Moving Defendants claim that because § 707 states that "[a]ll such actions shall be conducted in accordance with" the procedures of § 706, the requirement stated in § 706 that states a claimant must file within 180 days of the alleged misconduct should also be imputed to causes of action instituted by § 707. (See Kauai Mot. at 18–29; Maui Mot. at 17–18; Kelena Mot. at 23–26; De Mot. at 19–22; A&B Mot. at 25–34; MZB Mot. at 26–34.)  Although the Court has already outlined sufficient rational to grant Moving Defendants' Motions to Dismiss, the Court wants to be clear that Moving Defendants' argument that the 180/300 day time limits described in § 706 applies to § 707 is not persuasive.

33

As a preliminary matter, it is self-evident that to the extent Plaintiff

alleges theories of liability pursuant to § 706, the Claimants must have filed their

charges with the EEOC within 180 days of the alleged employer misconduct; the

statute is clear in that regard.  Plaintiff does not dispute this in any one of its

myriad Oppositions.[10]

The Court is not persuaded, however, that the time limitation

described in § 706 is applicable to § 707.  While the Court acknowledges that

---

[10] It is worthy of note, however, that the "Continuing Violations Doctrine"
may save some of Plaintiff's theories of liability brought pursuant to § 706.  This
doctrine provides an exception to the statute of limitations for certain types of
claims, specifically those that "cannot be said to occur on any particular day" and
may have occurred, in part, outside of the time limitation period.  See Nat'l R.R.
Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).  For instance, alleged
employment misconduct which gives rise to a hostile work environment claim
"cannot be said to occur on any particular day.  [Instead,] it occurs over a series of
days or perhaps years."  Id. at 116.  Thus a claim for a hostile work environment
may be tenable notwithstanding that some of the alleged misconduct occurred prior
to the 180/300 day period, provided that "at least one act falls within the time
period."  Id. at 127; see also Stanley v. Trustees of Cal. State. Univ., 433 F.3d
1129, 1136 (9th Cir. 2006); Cherorsky v. Henderson, 330 F.3d 1243, 1246 (9th
Cir. 2003); Kang v. U. Lim America, Inc., 296 F.3d 810, 818 (9th Cir. 2002).  By
contrast, "[d]iscrete acts, such as termination, failure to promote, denial of transfer,
or refusal to hire are easy to identify."  Morgan, 536 U.S. at 114.  Accordingly,
"discrete discriminatory acts are not actionable if time barred, even when they are
related to acts alleged in timely filed charges."  Id. at 113; see also Stanley, 433
F.3d at 1136.  However, since Plaintiff's FAC is so factually deficient, the Court
cannot determine which, if any, of its factual allegations would be saved by the
"continuing violations doctrine" and which allegations relate to "discrete acts"
such that the time period in § 706 would operate to bar them.

34

district courts across the country have split on this issue, this Court has already

determined that the time limitation in § 706 is not applicable to § 707.  In EEOC v.

Scolari Warehouse Markets, Inc., 488 F. Supp. 2d 1117 (D. Nev. 2007), this Court

held as follows:

> The EEOC is the only federal law enforcement agency that may
> pursue pattern-or-practice claims against private entities.  See 42
> U.S.C. § 2000e-6  (pattern-or-practice claims commonly are referred
> to as "707 cases" because authority is derived from § 707 of Title
> VII).  Unlike private litigants, a statute of limitations does not apply
> when the EEOC brings a pattern-or-practice suit.  See 42 U.S.C. §
> 2000e-6; see also Mitsubishi, 990 F. Supp. at 1083–84 (commenting
> that 707 claims do not contain a statute of limitations for
> pattern-or-practice cases initiated by a Commissioner's charge); U.S.
> v. Fresno Unified School Dist., 592 F.2d 1088, 1096 n.5 (9th Cir.
> 1979) (noting, indirectly, that statute of limitations for 707 claims may
> be illogical because there is no certain date from which the limitations
> period could run).  See generally Federal Procedure, Lawyer's Edition
> § 50-633 (1997) ("There is [] no statute of limitations under Title VII
> for pattern-or-practice suits brought by the EEOC.").

Id. at 1136 (footnote omitted).

        Moving Defendants have provided this Court with no persuasive

argument as to why it should now conclude differently.  For instance, Moving

Defendants assert that the "plain text" suggests that the limitation period should be

imported to § 707.  (See Kauai Mot. at 18–29; Maui Mot. at 17–18; Kelena Mot. at

23–26; De Mot. at 19–22; A&B Mot. at 25–34; MZB Mot. at 28–29.)  A plain

reading of the text, however, suggests to the Court that the "actions" referenced in

§ 707 relate to the EEOC's "authority to investigate and act on a charge of a pattern or practice of discrimination." Id. § 2000e-6(e).  This conclusion is bolstered by the fact that subsection (e) is entitled "Investigation and action by Commission pursuant to filing of charge of discrimination." Id.  This suggests that the "actions" referred to in the subsection is the "action by Commission" and not any action which must be performed by a claimant.  Nowhere in § 707 is there any mention of the time period in which a claimant must file a complaint with the EEOC.  "If the plain meaning of the statute is unambiguous, that meaning is controlling and we need not examine legislative history as an aid to interpretation unless the legislative history clearly indicates that Congress meant something other than what it said." Washington v. Chimel Innolux Corp., ---F.3d---, 2011 WL 4543086, at * 2 (9th Cir. Oct. 3, 2011) (internal quotation marks and citations omitted).  Here there is no indication that "Congress meant something other than what it said."  The Court therefore concludes, as it did in Scolari, that "a statute of limitations does not apply when the EEOC brings a pattern-or-practice suit." 488 F. Supp. 2d at 1136.  Moving Defendants' arguments to the contrary are without merit.

36

E.      Rule 10(b)

Finally, many of the Moving Defendants request that the Court

dismiss the FAC for failing to comply with Rule 10(b).  (Kauai Mot. at 30; A&B

Mot. at 34; MZB Mot. at 34.)  This rule provides:

> (b) Paragraphs; Separate Statements.  A party must state its claims or
> defenses in numbered paragraphs, each limited as far as practicable to
> a single set of circumstances.  A later pleading may refer by number to
> a paragraph in an earlier pleading.  If doing so would promote clarity,
> each claim founded on a separate transaction or occurrence--and each
> defense other than a denial--must be stated in a separate count or
> defense.

Fed. R. Civ. P. 10(b).  The Court does not here grant the Moving Defendants'

Motions on these grounds.  Nevertheless, the Court notes that it would certainly

"promote clarity" if Plaintiff separated its multiple causes of action into distinct

counts rather than stringing together sixty-one paragraphs without meaningful

delineation between them and directs Plaintiff to do so if it chooses to file an

amended complaint pursuant to this Order.

F.      Dismissal Without Prejudice

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend]

when justice so requires."  Further, "requests for leave should be granted with

extreme liberality."  Moss v. U.S. Secret Service, 572 F.3d 962, 792 (9th Cir.

2009).  "Dismissal without leave to amend is improper unless it is clear . . . that the

37

complaint could not be saved by an amendment." Id.  "However, 'liberality in

granting leave to amend is subject to several limitations.'" Cafasso, U.S. ex rel. v.

Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting Ascon

Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)).  "Those

limitations include undue prejudice to the opposing party, bad faith by the movant,

futility, and undue delay." Id. (citing Ascon Props, 866 F.2d at 1160).  "Further,

'[t]he district court's discretion to deny leave to amend is particularly broad where

plaintiff has previously amended the complaint.'" Id.  (quoting Ascon Props, 866

F.2d at 1160).

The Court recognizes that it may be possible for Plaintiff to state a

claim if provided the opportunity to amend.  The FAC is therefore **DISMISSED**

**WITHOUT PREJUDICE** as to all Moving Defendants with leave to amend no

later than forty-five (45) days from the filing of this Order.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and

**DENIES IN PART** Plaintiff's Motion to Stay (Doc. # 109) and **GRANTS** Captain

Cook, Del Monte, Kauai Coffee, Kelena Farms, Mac Farms, Maui Pineapple,

A&B, and MZB's (collectively "Moving Defendants") Motions to Dismiss (Docs.

## 20, 22, 29, 39, 46, 48, 58, 59).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 2, 2011.

_____
David Alan Ezra
United States District Judge

EEOC v. Global Horizons, Inc., et al, Cv. No. 11-00258 DAE-RLP; (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STAY; (2) GRANTING DEFENDANTS' MOTIONS TO DISMISS AND (3) DISMISSING THE FIRST AMENDED COMPLAINT WITHOUT PREJUDICE AS TO THE MOVING DEFENDANTS