SEYFARTH SHAW LLP
Gerald L. Maatman, Jr. (*pro hac vice*)
gmaatman@seyfarth.com
Chris DeGroff (*pro hac vice*)
cdegroff@seyfarth.com
131 S. Dearborn Street, Suite 2400
Chicago, Illinois  60603-5577
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

Laura J. Maechtlen (*pro hac vice*)
lmaechtlen@seyfarth.com
Robb D. McFadden (*pro hac vice*)
rmcfadden@seyfarth.com
Brian Wong (*pro hac vice*)
bwong@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, CA 94105-2930
Telephone:  (415) 544-1011
Facsimile:  (415) 397-2823

STARN O'TOOLE MARCUS & FISHER, a Law Corporation
Mark J. Bennett  (Bar No. 2672)
mbennett@starnlaw.com
Richard J. Wallsgrove  (Bar No. 9054)
rwallsgrove@starnlaw.com
733 Bishop Street, Suite 1900
Honolulu, Hawaii 96813
Telephone:  (808) 537-6100
Facsimile:  (808) 537-5434

Attorneys for Defendant
KAUAI COFFEE COMPANY, INC. (nka McBryde Resources, Inc.)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CIVIL NO. 11-00257 DAE RLP |
| Plaintiff, | **DEFENDANT KAUAI COFFEE COMPANY, INC.'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT;** NOTICE OF MOTION AND MOTION; REQUEST FOR JUDICIAL NOTICE; CERTIFICATE OF SERVICE |
| vs. | |
| GLOBAL HORIZONS, INC. D/B/A GLOBAL HORIZONS MANPOWER, INC.; CAPTAIN COOK COFFEE COMPANY LTD.; DEL MONTE FRESH PRODUCE (HAWAII), INC.; KAUAI COFFEE COMPANY, INC.; KELENA FARMS, INC.; MAC FARMS OF HAWAII, LLC N/K/A MF NUT CO., LLC; MAUI PINEAPPLE COMPANY, LTD. A/K/A MAUI PINEAPPLE FARMS; ALEXANDER & BALDWIN, INC.; MASSIMO ZANETTI BEVERAGE USA, INC.; AND DOES 1-15, INCLUSIVE; | Judge:        Honorable David Alan Ezra |
| Defendants. | |

14624341v.12

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................ 1

II.  LEGAL ARGUMENT .................................................................. 2

    A.   The TAC Fails To Allege Facts Showing That Kauai Coffee Retaliated Against The Claimants For Engaging In A Protected Activity ................................................................................ 2

        1.   Kauai Coffee's Decision To Terminate Its Alleged Contract With Global Was Not Retaliatory ............................... 4

        2.   Kauai Coffee's Knowledge Of Complaints Made By Unidentified Claimants Does Not Establish That Kauai Coffee "Engaged In, Knew Of, Or Should Have Known Of" Any Retaliatory Conduct .................................................... 7

    B.   The TAC Fails To Allege Facts Showing That Kauai Coffee "Knew Or Should Have Known Of" Global's Alleged Title VII Violations ............................................................................... 9

    C.   The TAC's Allegations Of Joint And Several Liability Are Overbroad ............................................................................ 19

III. CONCLUSION ........................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. Fed. Express Corp.*,
   No. 1:09CV17, 2011 U.S. Dist. LEXIS 34812 (M.D.N.C. Mar. 31, 2011).........8

*Caldwell v. ServiceMaster Corp. and Norrell Temporary Services*,
   966 F. Supp. 33 (D.D.C. 1997)......................................................................9, 18

*Calero-Cerezo v. United States Dept. of Justice*,
   355 F.3d 6 (1st Cir. 2004).....................................................................................6

*City of L.A. v. Manhart*,
   435 U.S. 702 (1978)...............................................................................................5

*Clark County School Dist. v. Breeden*,
   532 U.S. 268 (2001)...............................................................................................6

*Davis v. Team Elec. Co.*,
   520 F.3d 1080 (9th Cir. 2008) ..............................................................................2

*DiCarlo v. Potter*,
   358 F3d 408 (6th Cir. 2004) .................................................................................6

*Doe v. Grosvenor Ctr. Assocs.*,
   104 Haw. 500 (Haw. Ct. App. 2004)...............................................................10, 14

*EEOC v. Global Horizons, Inc.*,
   CV No. 11-00257, 2012 U.S. Dist. LEXIS 35915 (D. Haw. March 16,
   2012) ....................................................................2, 3, 5, 7, 9, 15, 18, 20

*EEOC v. Global Horizons, Inc.*,
   No. CV-11-3045-EFS, 2012 U.S. Dist. LEXIS 105993 (E.D. Wash. July
   27, 2012) ............................................................................................................21

*Freitag v. Ayers*,
   468 F.3d 528 (9th Cir. 2006) ...................................................................9, 10, 18

*Manatt v. Bank of America, NA*,
   339 F.3d 792 (9th Cir. 2003) ...............................................................................6

14624341v.12

*Murray v. Principal Fin. Grp., Inc.*,
　613 F.3d 943, 945-46 (9th Cir. 2010) ................................................21

*Perez-Farias v. Global Horizons, Inc.*,
　No. CV-05-3061-RHW, 2008 U.S. Dist. LEXIS 27588 (E.D. Wash.
　March 27, 2008)...........................................................................16, 17

*Perry v. Chernin*,
　126 F.3d 1010 (7th Cir. 1997) .............................................10, 14, 18

*Prince v. Rice*,
　453 F. Supp. 2d 14 (D.D.C. 2006).......................................................8

*Raad v. Fairbanks North Star Borough School Dist.*,
　323 F.3d 1185 (9th Cir. 2003) .............................................................2

*Ray v. Henderson*,
　217 F.3d 1234 (9th Cir. 2000) .............................................................2

*Richmond v. ONEOK, Inc.*,
　120 F.3d 205 (10th Cir. 1997) .............................................................6

*Tabieros v. Clark Equip. Co.*,
　85 Haw. 336 (1997) ...........................................................................10

*Takayama v. Kaiser Found. Hosp.*,
　82 Haw. 486 (1996) ...........................................................................10

*Taylor-Rice v. State*,
　91 Haw. 60 (1999) .............................................................................10

*Torres-Lopez v. May*,
　111 F.3d 633, 640-43 (9th Cir. 1997)................................................21

**STATUTES**

42 U.S.C. 2000e-3(a) ..................................................................................3

**OTHER AUTHORITIES**

20 C.F.R. 655.122(n) ...............................................................................12

20 C.F.R. §§ 655.100, 655.122(l) ...........................................................18

14624341v.12

73 F.R. 76891, 76893 (Dec. 18, 2008) ................................................................12

Fed. R. Civ. P. 20(a)(2).......................................................................................20

14624341v.12

## I.   INTRODUCTION

Kauai Coffee Company, Inc. ("Kauai Coffee") moves to dismiss portions of the Equal Employment Opportunity Commission's ("EEOC") Third Amended Complaint ("TAC") on three grounds: (1) the TAC fails to state a claim for retaliation; (2) the TAC fails to allege facts showing that Kauai Coffee "knew or should have known of" Global Horizon, Inc.'s ("Global") alleged Title VII violations; and (3) the TAC alleges an overbroad theory of joint and several liability that — despite the Court's explicit instructions to narrow this allegation — impermissibly seeks to hold each Farm Defendant[1] liable for the Title VII violations that allegedly occurred at "each respective farm."

After filing four deficient complaints, the EEOC does not deserve a fifth bite at the apple.  Accordingly, and for reasons discussed more fully below, Kauai Coffee respectfully requests that the Court dismiss the EEOC's retaliation, derivative liability, and joint and several liability claims *without* leave to amend.

---

[1]/    The term "Farm Defendants" refers collectively to Kauai Coffee, Alexander & Baldwin, Inc. ("A&B"), Captain Cook Coffee Company Ltd. ("Captain Cook"), Del Monte Fresh Produce (Hawaii) ("Del Monte"), Kelena Farms, Inc. ("Kelena Farms"), Mac Farms of Hawaii, LLC ("Mac Farms"), Maui Pineapple Company, Ltd. ("Maui Pineapple"), and Massimo Zanetti Beverage, USA, Inc. ("MZB").

1

## II.   LEGAL ARGUMENT

### A.   The TAC Fails To Allege Facts Showing That Kauai Coffee Retaliated Against The Claimants For Engaging In A Protected Activity

"To state a claim for retaliation under Title VII, a plaintiff must demonstrate that: '(1) the employee engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment decision.'" *EEOC v. Global Horizons, Inc.*, CV No. 11-00257 DAE-RLP, 2012 U.S. Dist. LEXIS 35915, at * 42 (D. Haw. March 16, 2012) (citing *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093-94 (9th Cir. 2008); *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003)). "Conduct constituting a 'protected activity' includes filing a charge or complaint, testifying about an employer's alleged unlawful practices, and 'engaging in other activity intended to oppose an employer's discriminatory practices.'" *Id.* at *42-43 (citing *Raad*, 323 F.3d at 1197). "Meanwhile, 'adverse employment action' has been interpreted to mean 'any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.'" *Id.* at *43 (citing *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000)).

Here, the EEOC asserts four allegations in support of its claim that Kauai Coffee "engaged in, knew of, or should have known" of retaliatory conduct:

- When the Claimants allegedly complained about their pay, they were told that "Kauai Coffee already paid Global" so they should "take up the issue with Global." (Doc. # 263, ¶¶ 552, 555, 597, 598.)

- When the Claimants allegedly complained about overcrowded housing, Kauai Coffee "did nothing ...." (*Id.*)

- After the Claimants allegedly asked for larger vans so more than five people could go to the grocery store at a time, transportation to the grocery store "remained a problem."[2] (*Id.* at ¶¶ 554, 555.)

- After the Claimants allegedly complained to Kauai Coffee "in the fall and/or winter of 2005," Kauai Coffee retaliated against the Claimants by *terminating* its contract with Global in September 2006. (*Id.* at ¶¶ 558, 605.)

None of these allegations are sufficient to state a claim for retaliation for the reasons discussed below.

---

[2] Asking for a ride to the grocery store does not qualify as a protected activity under Title VII as weekend transportation does not relate to a term or condition of the Claimants' employment. *See* 42 U.S.C. 2000e-3(a); *EEOC v. Global Horizons, Inc.*, CV No. 11-00257 DAE-RLP, 2011 U.S. Dist. LEXIS 127734, at *35 (D. Haw. Nov. 2, 2011).

14624341v.12

### 1. Kauai Coffee's Decision To Terminate Its Alleged Contract With Global Was Not Retaliatory

Aside from highlighting the EEOC's disingenuous attempt to have it both ways, the allegation that Kauai Coffee retaliated against the Claimants by *terminating* the contract with Global is not actionable for several substantive reasons. (Doc. # 263, ¶¶ 558, 605.)

First, by the time Kauai Coffee allegedly terminated the "third contract"[3] with Global, the Hawaii Department of Labor and Industrial Relations ("HDLIR") had already announced that Global was "***not authorized to do business in Hawaii***," and the U.S. Department of Labor ("DOL") had already announced plans to bar Global from participating in the H-2A visa program for a period of three years. (Doc. # 263, ¶¶ 541-542.) Thus, the EEOC's pleading offers a legitimate, non-retaliatory reason for Kauai Coffee's decision to terminate contract negotiations with Global: by September 2006, Global was prohibited from

---

[3] /   As the EEOC previously admitted, Kauai Coffee entered into contracts with Global in 2004 and 2005, but did not enter into a third contract with Global for the 2006 harvest season. (*See* Doc. # 55 p. 8, 55-1 ¶¶ 7-8, 55-7, 55-8.) The "contract" alleged in the TAC is a "Letter of Intent" that enabled Global to initiate the H-2A approval process, but ultimately no contract was executed. This explains why the TAC identifies specific dates the first and second contracts were in effect, but omits any details regarding a purported third contract.

4

supplying H-2A workers to farms in Hawaii, and thus, Kauai Coffee could not continue to contract with Global — even if it wanted to.[4]

Second, the TAC fails to establish an employment relationship between Kauai Coffee and the Claimants at the time the third contract was allegedly terminated. *EEOC v. Global Horizons, Inc.*, 2012 U.S. Dist. LEXIS 35915, at *21-24; *City of L.A. v. Manhart*, 435 U.S. 702, 718 n.33 (1978) (Title VII "primarily govern[s] relations between employees and their employer, not between employees and third parties"). The EEOC admits that the Claimants stopped working for Kauai Coffee in "June or July of 2006 ...." and does not allege that Kauai Coffee hired, contracted with, or exercised any control over the Claimants after this time period. (Doc. # 263, ¶ 516.) Once again, the EEOC pleading is self-defeating, as it clearly establishes that the Claimants were not (and could not have been) jointly employed by Kauai Coffee in September 2006 when the third contract with Global was allegedly terminated.

Lastly, the TAC fails to establish a causal relationship between the Claimants' "fall and/or winter of 2005" complaints and Kauai Coffee's decision to end its relationship with Global. (Doc. #263, ¶¶ 558, 599.) Cases accepting

---

[4] / The notes from the EEOC investigator's conversation with Tim Martin, Kauai Coffee's General Superintendent Factory Operations, support Kauai Coffee's argument that its decision not to enter into a third contract was due to Global's failings, not because of the Thai workers' alleged complaints. (Doc. # 55-4, p. 3.)

temporal proximity between a protected activity and an adverse employment action as sufficient evidence of causation "uniformly hold that *the temporal proximity must be 'very close.'*" *Clark County School Dist. v. Breeden*, 532 US 268, 273 (2001) (emphasis added).  By contrast, the EEOC admits that Kauai Coffee's decision to terminate its relationship with Global was made *nearly a year* after the Claimants complained and *several months* after the second contract with Global had been completed.  (Doc. # 263, ¶¶ 516, 558, 602, 605.)  These allegations, without more, are not sufficient to create an inference of a causal connection between the Claimants' alleged protected activity and Kauai Coffee's decision to terminate its contract with Global.  *See Manatt v. Bank of America, NA*, 339 F.3d 792, 802 (9th Cir. 2003) (nine months not sufficiently close); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three month period not sufficiently close); *compare Calero-Cerezo v. United States Dept. of Justice*, 355 F.3d 6, 25 (1st Cir. 2004) (one month sufficiently close to create inference of causal connection); *DiCarlo v. Potter*, 358 F3d 408, 422 (6th Cir. 2004) (21 days sufficient to establish prima facie case).  Accordingly, the Court should find that the TAC fails to allege any facts indicating that Kauai Coffee's decision to terminate its contract with Global was retaliatory.

**2. Kauai Coffee's Knowledge Of Complaints Made By Unidentified Claimants Does Not Establish That Kauai Coffee "Engaged In, Knew Of, Or Should Have Known Of" Any Retaliatory Conduct**

In dismissing the EEOC's retaliation claim from the Second Amended Complaint ("SAC"), the Court found that "*the mere fact that a particular Defendant knew or should have known of a particular complaint and failed to correct the problem does not demonstrate that the defendant engaged in, knew of, or should have known of any retaliatory conduct.*" *EEOC v. Global Horizons, Inc.*, 2012 U.S. Dist. LEXIS 35915, at *44 (emphasis added).  Here, as before, the TAC alleges that Kauai Coffee was aware of certain complaints made by one or more unnamed Claimants regarding housing, wages, and transportation, but it fails to show that Kauai Coffee either (1) directly retaliated against the Claimants for their opposition to unlawful activity, or (2) "knew or should have known of" Global's alleged retaliatory conduct. *Id.*; (Doc. # 263, ¶¶ 552, 554, 555, 597, 598.)

Aside from terminating its contractual relationship with Global, the TAC does not identify a single "adverse employment action" Kauai Coffee allegedly took against the Claimants.  Instead, the EEOC alleges that Kauai Coffee retaliated against the Claimants because it did *nothing* to address their complaints.  Under these circumstances, preserving the *status quo* cannot constitute retaliatory conduct

7

because the same conditions existed *prior* to the Claimants' complaints, *i.e.*, the working conditions about which the Claimants complained were not imposed *because of* their alleged protected activity. *Prince v. Rice*, 453 F. Supp. 2d 14, 29 (D.D.C. 2006) ("One cannot ... bootstrap a retaliation claim from what amounts to ... merely a preservation of the then-existing *status quo*."); *Allen v. Fed. Express Corp.*, No. 1:09CV17, 2011 U.S. Dist. LEXIS 34812, at *31 (M.D.N.C. Mar. 31, 2011) (finding that the employer's "mere maintenance of the *status quo* in the face of Plaintiff's protected activity would not necessarily be evidence of retaliatory animus because Plaintiff's working conditions would not have become any worse as a result of her complaints.").

The EEOC's retaliation claim should also fail because the mere fact that the Claimants complained to Kauai Coffee about wages, housing, and transportation does not establish that Kauai Coffee "knew or should have known of" *Global's* alleged retaliatory conduct. The TAC claims that when the Claimants *complained to Global*, Global confiscated their passports, threatened to deport them, and prohibited any contact with outsiders. (Doc. # 263, ¶¶ 549, 556.) However, nothing in the TAC establishes that Kauai Coffee was privy to the exchanges between the Claimants and Global's supervisors, knew of the exchanges, or knew of Global's retaliatory conduct. *See id.* Simply put, even if Global retaliated against the Claimants for complaining, the TAC fails to establish that Kauai Coffee

knew or should have known about Global's retaliatory conduct. *EEOC v. Global Horizons, Inc.*, 2012 U.S. Dist. LEXIS 35915, at *44.

In sum, the TAC asserts four factual allegations in support of its retaliation claim against Kauai Coffee, none of which are actionable under Title VII. Therefore, this claim should be dismissed without leave to amend. *EEOC v. Global Horizons, Inc.*, 2012 U.S. Dist. LEXIS 35915, at *44-45.

**B.    The TAC Fails To Allege Facts Showing That Kauai Coffee "Knew Or Should Have Known Of" Global's Alleged Title VII Violations**

The Court previously found "the mere fact that a particular Defendant knew or should have known of a particular complaint and failed to correct the problem does not demonstrate that the defendant engaged in, knew of, or should have known of any retaliatory conduct." *EEOC v. Global Horizons, Inc.*, 2012 U.S. Dist. LEXIS 35915, at *44. By the same logic, Kauai Coffee should not be held liable on the basis that it "knew or should have known of" any of Global's alleged Title VII violations. *Id.*

"To prevail on a theory of joint employer liability, a plaintiff must show that … defendant knew or should have known of … discriminatory conduct and … failed to take those corrective measures within its control." *Caldwell v. ServiceMaster Corp. and Norrell Temporary Services*, 966 F. Supp. 33, 46 (D.D.C. 1997); *Freitag v. Ayers*, 468 F.3d 528, 538 (9th Cir. 2006); *EEOC v. Global*

9

*Horizons, Inc.*, 2012 U.S. Dist. LEXIS 35915, at *36-38. As the Ninth Circuit explained,

> This theory of liability is grounded not in the harassing act itself ... but rather in the employer's "*negligence* and ratification" of the harassment through its failure to take appropriate and reasonable responsive action.

*Freitag*, 468 F.3d 528 at 538 (emphasis added). A negligence claim "incorporates the necessity of notice to the employer, since *without notice there cannot be negligence*."[5] *Perry v. Chernin*, 126 F.3d 1010, 1015 (7th Cir. 1997) (emphasis added).

Here, the EEOC's claim that Kauai Coffee should be held liable for Global's alleged Title VII violations is based on four factual allegations, each of which fails to demonstrate that Kauai Coffee "knew or should have known of" Global's alleged Title VII violations and negligently failed to take appropriate corrective action within its control.

---

[5]/      In the State of Hawaii, a plaintiff must establish four essential elements in order to state a claim for negligence: (1) the existence of a legal duty to refrain from taking actions that might foreseeably cause harm to others; (2) a breach of the duty; (3) a reasonably close causal connection between the breach and a resulting injury; and (4) actual loss or damage. *Takayama v. Kaiser Found. Hosp.*, 82 Haw. 486, 498-499 (1996); *Tabieros v. Clark Equip. Co.*, 85 Haw. 336, 353 (1997); *Taylor-Rice v. State*, 91 Haw. 60, 71-72 (1999); *Doe v. Grosvenor Ctr. Assocs.*, 104 Haw. 500, 511 (Haw. Ct. App. 2004)) (The "[f]oreseeability [of a particular harm] must be analyzed in light of all the circumstances on a case by case approach.").

> 1.  *The TAC alleges that Kauai Coffee "knew or should have known" of Global's Title VII violations because the HDLIR ordered Global to discontinue operations in Hawaii effective June 26, 2006, and on or about July 27, 2006, the DOL issued a Notice of Prospective Denial of Temporary Alien Agricultural Labor Certification to Global, proposing to ban Global from participating in the H-2A program for three years. (Doc. # 263, ¶¶ 146, 148-149 [emphasis added].)*

Contrary to the EEOC's suggestion, the findings of the HDLIR and DOL do not show that Kauai Coffee had "constructive notice" of Global's alleged Title VII violations and failed to take appropriate corrective action. (Doc. # 263, ¶¶ 146, 148-149, 541-542.) According to the TAC, the Claimants stopped working at Kauai Coffee in "**June or July of 2006**," while the HDLIR's findings were issued in **late June 2006** and the DOL's findings were issued in **late July 2006**. (Doc. # 263, ¶¶ 146, 148-149, 516 [emphasis added].) Thus, the EEOC concedes that the HDLIR and DOL's findings were either: (1) issued *after* the Claimants stopped working at Kauai Coffee, and thus, Kauai Coffee had no opportunity to take corrective action; *or* (2) the Claimants stopped working for Kauai Coffee immediately *after* the findings were released, creating an inference that Kauai Coffee took reasonable corrective action. Consequently, the HDLIR and DOL's findings are not a basis upon which Kauai Coffee may be held liable for Global's alleged Title VII violations.

2.    *The TAC alleges that Kauai Coffee "knew or should have known" of Global's Title VII violations because Kauai Coffee knew that a Thai employee named Sam ran away at the airport in 2005.  (Doc. # 263, ¶ 540.)*

The allegation that a Thai employee named Sam ran away at the airport in 2005 is not relevant to determining whether Kauai Coffee "knew or should have known of" Global's alleged Title VII violations because the TAC does not describe the circumstances under which the worker ran away.

Federal regulations for the H-2A program contain provisions related to worker "abandonment," thereby acknowledging the reality that H-2A temporary guest workers run away from time to time.  *See* 20 C.F.R. 655.122(n).  The Federal Register even goes so far as to express concern for H-2A employers whose temporary guest workers run away, stating "that the current regulations do not provide a sufficient *remedy to petitioners* that 'lose' H-2A workers before the completion of work" because the only way to replace the lost workers is by filing a new H-2A petition.  *See* 73 F.R. 76891, 76893 (Dec. 18, 2008) (emphasis added).  Thus, the Code of Federal Regulations and Federal Register recognize that temporary guest workers may — and often do — "abandon" their H-2A employment.  This allegation is too slender a reed on which to base a large-scale pattern or practice lawsuit of the ilk alleged by the EEOC.

Here, it is unreasonable to assume that Kauai Coffee's knowledge of a single runaway worker was sufficient to put it on notice of a third party entity, Global's,

12

alleged Title VII violations.  From Kauai Coffee's perspective, the worker could have run away for any number of reasons, including the pursuit of economic opportunities that were not available in Thailand.  Without alleging any facts concerning the circumstances surrounding the incident that would have enabled Kauai Coffee to understand *why* the worker ran away,[6] the Court should find that this allegation is not sufficient to put Kauai Coffee on notice of Global's alleged Title VII violations.

> 3.  *The TAC alleges that Kauai Coffee "knew or should have known" of Global's Title VII violations because Kauai Coffee knew that Global did not pay the Claimants on time, if at all.  (Doc. # 263, ¶ 546.)*

The alleged complaints by Claimants about the manner in which they were paid by Global are not sufficient to hold Kauai Coffee liable for *Global's* alleged Title VII violations for two main reasons.

First, any complaints by the Claimants about the manner in which they were paid did not make Global's alleged Title VII violations reasonably foreseeable, *i.e.*, while they may have put Kauai Coffee on notice that the Claimants were not paid

---

[6] /    The EEOC previously submitted its investigators notes from an interview with Tim Martin, Kauai Coffee's General Superintendent Factory Operations, and Greg Williams, Orchard Operations Manager.  (Doc. # 55-1 ¶¶ 4-6, 55-4, 55-6.)  The notes state that *after* Kauai Coffee's contract with Global ended, a worker named Sam ran away when he was scheduled to leave the island.  (Doc. # 55-4 p. 3, 55-6 p. 3.)  Consistent with H-2A regulations and the Federal Register, these notes demonstrate that the worker likely "abandoned" his employment because it was time for him to return to Thailand.

13

properly, it did not put Kauai Coffee on notice of the possibility that the payments
were improper because of the Claimants' race and/or national origin. *Grosvenor
Ctr. Assocs.*, 104 Haw. at 511 (The "[f]oreseeability [of a particular harm] must be
analyzed in light of all the circumstances on a case by case approach."); *Perry*, 126
F.3d at 1015 (7th Cir. 1997) ("The negligence requirement incorporates the
necessity of notice to the employer, since without notice there cannot be
negligence."). From Kauai Coffee's perspective, there could have been several
explanations for the untimely payments, including administrative errors,
processing delays, or cash flow problems. These explanations do not justify the
untimely payments, but they are realistic, non-discriminatory reasons unrelated to
the Claimants' race or national origin.

Second, Kauai Coffee *did not control* Global or the manner in which Global
paid the Claimants. According to the allegations in the EEOC's TAC, Kauai
Coffee completed timesheets for the Claimants and sent them to Human Resources
Administrator, Joan Morita, who processed them and forwarded them to Global.
(Doc. # 263, ¶ 529.) Global then invoiced Kauai Coffee for the hours the
Claimants worked, plus a fixed percent for its services. (Doc. # 55-1 ¶ 5, 55-5 p.
1-2; Request for Judicial Notice ["RJN"], Exs. A-B, § 3(b) [stating that Global
"shall pay all wages when due to its employees and comply with all laws and
regulations governing the payment of such wages."], § 8 [fee schedule].) Thus,

14

when the Claimants complained about being paid late, Kauai Coffee supervisor Richard Loero told them that "*Kauai Coffee already paid Global* and that the claimants had to take up the issue with Global." (Doc. # 263, ¶ 552 [emphasis added].)

These facts demonstrate that even if the complaints about wages put Kauai Coffee on notice of Global's alleged Title VII violations (they do not), the TAC does not allege facts showing that Kauai Coffee negligently failed to take corrective action that was *within its control*. To the contrary, Global was solely responsible for paying the Claimants and there is no allegation that Kauai Coffee had any control over Global or its payroll department. Accordingly, just as the Court has found that the Claimants' alleged complaints about not being paid did *not* put Kauai Coffee on notice of Global's retaliatory conduct, so too should it find that their complaints about wages did not put Kauai Coffee on notice of Global's discriminatory or harassing conduct. *EEOC v. Global Horizons, Inc.*, 2012 U.S. Dist. LEXIS 35915, at *44.

> 4.   *The TAC alleges that Kauai Coffee "knew or should have known" of Global's Title VII violations because Claimants were paid less than Filipino workers. (Doc. # 263, ¶ 546.)*

The allegation that the Claimants were paid less than Filipino workers does not establish that Kauai Coffee "knew or should have known of" Global's alleged Title VII violations because the discrepancy in pay is explained by non-

15

discriminatory differences between domestic and H-2A workers.  These

differences were discussed extensively in *Perez-Farias v. Global Horizons, Inc.*,

No. CV-05-3061-RHW, 2008 U.S. Dist. LEXIS 27588, at *2 (E.D. Wash. March

27, 2008), a case arising from similar facts.  In *Perez-Farias*, domestic workers

filed suit against Global and two farms alleging that Global discriminated against

them and *in favor of Thai H-2A workers* on the basis of race and national origin.

*Id*. at *2.  As in this case, the question before the court was whether the farms

should be held derivatively "liable as joint employers for any discrimination

against the Plaintiff[s] ... committed by Global." *Id*. at *10.  After several days of

testimony and a bench trial, the court found that the farms could *not* be held liable

because Global did not engage in discrimination.  *Id*. at *10-11.  As the court

explained,

> Global had two types of employees. The foreign workers
> were captives of Global. They remained in the custody of
> Global, lived in housing provided by Global, used Global
> buses for transportation to and from the job, were paid
> even if not working, and had no choice to seek other
> employment in this country. If they did not want to work
> for Global, they were sent back to Thailand. [¶]  The
> local workers  lived at home, commuted to the job, could
> decide to quit, could negotiate for better wages, and
> could change jobs without any penalty. *The difference in
> treatment of the two classes of workers by Global is
> explained by the different circumstances of the two
> classes and the proven preference of Global to use
> foreign workers*. While ordinarily the different treatment
> of workers can give rise to an inference of
> discrimination, the inference does not fit well in this case.

16

> *The differences were driven and explained by the*
> *different circumstances of the foreign and local workers*
> *and the requirements of the H-2A regulations.*

*Id.* at *10-11 (emphasis added). The court further found that the H-2A program

created an economic incentive for Global to employ H-2A workers instead of local

workers:

> Global had a strong economic motive to favor foreign
> workers, in that its President, Mordechai Orian, was paid
> $8,000 for every foreign worker hired. He was paid
> nothing for local workers hired .... Global had to pay the
> living expenses of the foreign workers and pay them
> wages once they were in the United States, even if not
> fully employed. Local workers paid their own
> subsistence and were not paid by Global if laid off. This
> evidence presented a strong case that the Global
> Defendants abused the H-2A program and breached the
> contracts offered to local workers, and had an economic
> incentive to do so.

*Id.* at *16-17. Accordingly, the court concluded that "the disfavored class and the

favored class were defined by the H-2A program, ***not impermissible racial***

***characteristics***." *Id.* at *15-16 (emphasis added).

Here, the allegation that the Claimants were "paid less than Filipino

workers" is not sufficient to hold Kauai Coffee liable for Global's alleged Title VII

violations because domestic and H-2A workers were treated differently for

legitimate reasons unrelated to their race or national origin. For instance, the H-2A

program required Global to pay temporary guest workers a wage rate that met or

exceeded the Adverse Effect Wage Rate ("AEWR"), a wage set by the DOL on an

annual basis.[7]  *See* 20 C.F.R. §§ 655.100, 655.122(l).  By contrast, the wage rates

for Kauai Coffee's domestic workforce were set by a Collective Bargaining

Agreement that took into consideration the employee's job classification and

seniority.  (RJN, Ex. C, p. 47-48.)  In other words, the H-2A regulations *required*

Kauai Coffee to treat H-2A workers (regardless of their race or national origin)

differently than domestic workers covered by the Collective Bargaining

Agreement.  Under these circumstances, merely knowing that Claimants were paid

differently did not put Kauai Coffee on notice of Global's alleged misconduct.

In conclusion, the EEOC's theory of derivative liability "incorporates the

necessity of notice to the employer, ***since without notice there cannot be***

***negligence***."  *Perry*, 126 F.3d at 1015 (7th Cir. 1997) (emphasis added).  The

allegations discussed above fail to establish that Kauai Coffee reasonably "should

have known" of Global's alleged Title VII violations, and because of this, the

EEOC cannot show that Kauai Coffee negligently failed to take appropriate

corrective action within its control.  *Caldwell*, 966 F. Supp. at 46; *Freitag*, 468

F.3d at 538; *EEOC v. Global Horizons, Inc.*, 2012 U.S. Dist. LEXIS 35915, at *36-

38.  Accordingly, the Court should dismiss the EEOC's claims to the extent they

---

[7] /     For example, the minimum wage in Hawaii is currently $7.25 per hour, while the AEWR for Hawaii is $12.26.  (*See* http://hawaii.gov/labor/wsd/wsd/minimumwage_2007.shtml; http://www.dol.gov/opa/media/press/eta/ETA20111794fs.pdf).

14624341v.12

allege that Kauai Coffee should be held derivatively liable for any of Global's alleged Title VII violations.

### C.   The TAC's Allegations Of Joint And Several Liability Are Overbroad

In moving to dismiss the Second Amended Complaint ("SAC"), Kauai Coffee challenged the EEOC's theory of joint and several liability on the grounds that the EEOC asserted claims against it on behalf of Claimants *who never worked at Kauai Coffee.* (Doc. #128, ¶74) (alleging that all defendants "are persons against whom a right of relief is asserted jointly, severally, or out of the same transaction or series of transactions....") Kauai Coffee argued that while the allegations in the SAC may have been sufficient to "establish a joint employer relationship with Claimants like Mongkol Bootpasa who worked for Kauai Coffee because they were allegedly supervised and controlled by Kauai Coffee personnel," it failed to "allege any facts showing that Kauai Coffee supervised or controlled Claimants who worked exclusively for other companies." (*See* Doc. # 263, p. 16-17 [citing Doc. # 128 at ¶¶ 8 (Nookrai Matwiset worked for Captain Cook), 16 (Jakarin Phookhien worked for Del Monte), 32 (Janporn Suradanai worked for Kelena Farms), 40 (Suthat Promnonsri worked for Mac Farms), 48 (Itthi Oa-Sot worked for Maui Pineapple), and 77 (Marut Kongpia worked for Global)].)

19

In its opposition briefs to Kauai Coffee's Motions to Strike and Sever, the

EEOC attempted to re-write Paragraph 74 by claiming that it merely alleged that

each Farm Defendant is only "liable for the discrimination that took place *at its*

*farm*." (*Compare* Doc. # 128, ¶ 74 *with* # 179, at p. 2, 5 *with* # 180, at p. 2.) The

Court took notice of the difference between the allegations in the SAC and the

EEOC's stated position and instructed the EEOC to "clarify this point in its

amended complaint." *EEOC v. Global Horizons, Inc.*, 2012 U.S. Dist. LEXIS

35915, at *25-26 fn. 3.

By neglect or design, the EEOC's allegations of joint and several liability in

the TAC remain overbroad and, in fact, are broader than those set forth in earlier

versions of its complaints. The "revised" allegations can be read as seeking to hold

each Farm Defendant liable for the alleged Title VII violations that occurred "at

*each* respective farm." (Doc. # 263, ¶ 74 [emphasis added].) Specifically, the

TAC reiterates the same allegation from the SAC, and then adds broader language,

stating:

> The Farm Defendants are named as parties pursuant to
> Fed. R. Civ. P. 20(a)(2) in that Defendant Global and
> *each Farm Defendant*, at all relevant times, acted as
> joint employers and/or successors with regard to *each*
> *Claimant who worked at each respective farm*.

(*Id.* [emphasis added].) Because the Court already found this language insufficient

and in need of clarification, and because the TAC does not allege facts sufficient to

hold Kauai Coffee liable as a joint employer "with regard to each Claimant who worked at each respective farm," the Court should dismiss the above-referenced sentence from Paragraph 74.

Moreover, even if the Court determines that the TAC alleges a viable theory of joint and several liability against Kauai Coffee for Global's alleged Title VII violations, the Court should nonetheless find that the scope of any such liability is limited to conduct that occurred on Kauai Coffee's property. In *EEOC v. Global Horizons, Inc.*, No. CV-11-3045-EFS, 2012 U.S. Dist. LEXIS 105993 (E.D. Wash. July 27, 2012), a lawsuit alleging identical theories of liability against Global and two farms located near Yakima, Washington, the court found that the farms "were employers of the Claimants at their respective orchards," but that their potential liability should be limited to "orchard -related matters" because the EEOC's complaint failed to allege that they "were responsible for, oversaw, exerted control over, or should have exerted control over ... non-orchard related matters" — matters such as the Global's recruitment of the Thai workers, transportation to/from the orchards, and the manner in which it paid their wages. *Id.* at *9-13; (RJN, Ex. D, p. 7-8.) Here, the same principle holds true: as an alleged joint employer with Global, Kauai Coffee's potential liability cannot exceed the scope of control it allegedly asserted over the Claimants. *EEOC v. Global Horizons, Inc.*, 2012 U.S. Dist. LEXIS 105993, at *10-11 (citing *Torres-Lopez v. May*, 111

21

F.3d 633, 640-43 (9th Cir. 1997) [discussing joint employment in context of Fair

Labor Standards Act]; *Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943, 945-46

(9th Cir. 2010) [discussing factors to consider when determining whether a

defendant is an employer for purposes of Title VII]).  Accordingly, the Court

should conclude that Kauai Coffee cannot be held liable for conduct that allegedly

occurred beyond its property — such as Global recruitment of the Claimants

(including any representations Global may have made), the manner in which the

Claimants were transported to/from Thailand, and Global's payment of the

Claimants' wages — because the TAC only alleges that Kauai Coffee controlled

the Claimants employment with respect to matters that occurred on its property.[8]

*Id.* at *12-13.

## III.   CONCLUSION

After four bites at the apple, the TAC remains severely deficient in three

important respects.  First, it fails to state a retaliation claim against Kauai Coffee

because it does not allege that Kauai Coffee subjected the Claimants to an adverse

employment action as a result of their alleged protected activity.  Second, the

EEOC's attempts to hold Kauai Coffee derivatively liable for Global's alleged

---

[8] /      Although the TAC alleges that Kauai Coffee provided the Claimants
with transportation to and from the grocery store, it does not allege that this
conduct is actionable.  (Doc. # 263, ¶¶ 531, 532, 553.)  Therefore, these
allegations do not expand the scope of Kauai Coffee's potential liability to
conduct that occurred off-site.

14624341v.12

Title VII violations should be rejected because the TAC does not allege facts showing that Kauai Coffee negligently failed to take corrective action within its control.  And lastly, the EEOC's allegations of joint and several liability should be dismissed because the TAC continues to assert an overbroad theory of liability not supported by its factual allegations.  Accordingly, Kauai Coffee respectfully requests that the Court dismiss these claims *without* leave to amend, or for any further relief as may be deemed just.

Dated  August 1, 2012 Chicago, Illinois.

SEYFARTH SHAW LLP

By  */s/ Gerald L. Maatman, Jr.*
      Gerald L. Maatman, Jr.
Christopher J. DeGroff
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois  60603-5577
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

Laura J. Maechtlen
Robb D. McFadden
Brian Wong
SEYFARTH SHAW LLP
560 Mission St. Suite 3100
San Francisco, CA 94105-2930
Telephone:  (415) 544-1011
Facsimile:  (415) 397-8549

Mark J. Bennett
Richard John Wallsgrove
STARN O'TOOLE MARCUS & FISHER

14624341v.12

Pacific Guardian Center Makai Tower
733 Bishop Street, Suite 1900
Honolulu, HI 96813
Telephone: (808) 537-6100
Facsimile: (808) 537-5434

Attorneys for Defendant
KAUAI COFFEE COMPANY, INC. (nka
McBryde Resources, Inc.)

14624341v.12