IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
U.S. EQUAL EMPLOYMENT          ) CIVIL NO. 11-00257 LEK-RLP
OPPORTUNITY COMMISSION,        )
                               ) ORDER GRANTING IN PART AND
            Plaintiff,         ) DENYING IN PART PLAINTIFF'S
                               ) MOTION FOR PROTECTIVE ORDER RE:
      vs.                      ) IMMIGRATION STATUS, AND
                               ) INFORMATION RELATED TO
GLOBAL HORIZONS, INC. D/B/A    ) IMMIGRATION STATUS
GLOBAL HORIZONS MANPOWER,      )
INC., ET AL.                   )
                               )
            Defendants.        )
_____)
```

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER RE: IMMIGRATION STATUS, AND
<u>INFORMATION RELATED TO IMMIGRATION STATUS</u>

Before the Court is Plaintiff U.S. Equal Employment Opportunity Commission's ("EEOC") Motion for Protective Order re: Immigration Status, and Information Related to Immigration Status, filed on November 9, 2012 ("Motion").  ECF No. 402. Defendant Del Monte Fresh Produce (Hawaii), Inc. filed its Opposition to the Motion on November 21, 2012.  ECF No. 432. Defendants Alexander & Baldwin, Inc., Kauai Coffee Company, Inc., and Massimo Zanetti Beverage USA, Inc. filed their Opposition to the Motion on November 23, 2012.  ECF No. 434.  Defendant Maui Pineapple Company, Ltd. filed its Opposition to the Motion on November 23, 2012.  ECF No. 437.  Defendant Mac Farms of Hawaii, LLC filed its Opposition to the Motion on November 23, 2012.  ECF No. 438.  Defendant Kelena Farms, Inc. filed its Opposition to the Motion on November 23, 2012.  ECF No. 440.  Defendant Captain

Cook Coffee Company, Ltd.'s filed a Joinder the oppositions on November 26, 2012. ECF No. 441.[1] Defendant Global Horizons, Inc. ("Global") did not file an opposition or other response to the Motion. The EEOC filed its Replies on December 7, 2012. ECF Nos. 447, 448, 449, 450, and 451. The EEOC also filed an opposition to Defendant Captain Cook Coffee Company, Ltd.'s Joinder in the Oppositions. ECF No. 452. The Court found the Motion suitable for disposition without a hearing pursuant to Local Rule 7.2(d). ECF Nos. 412. After carefully reviewing the moving papers and the relevant legal authority, the Court GRANTS IN PART and DENIES IN PART the Motion.

## BACKGROUND

The EEOC filed the instant action pursuant to Title VII of the Civil Rights Act of 1964 and Title 1 of the Civil Rights Act of 1991 alleging unlawful employment practices on the basis of national origin, race, and retaliation. The EEOC claims that Defendants engaged in discrimination and a pattern or practice of discrimination when they subjected Marut Kongpia, Nookrai Matwiset, Jakarin Phookhien, Mongkol Bootpasa, Janporn Suradanai, Suthat Promnonsri, Itthi Oa-Sot, and a class of similarly

---

[1] Defendants Del Monte Fresh Produce (Hawaii), Inc., Alexander & Baldwin, Inc., Kauai Coffee Company, Inc., Massimo Zanetti Beverage USA, Inc., Maui Pineapple Company, Ltd., Mac Farms of Hawaii, LLC, Kelena Farms, Inc., and Captain Cook Coffee Company, Ltd. are collectively referred to as the "Farm Defendants" throughout this decision.

situated Thai and Asian individuals (collectively "Claimants") to harassment, disparate treatment, retaliation, and constructive discharge on the basis of the Claimants' national origin and race. See Third Amended Complaint, ECF No. 263.

The Third Amended Complaint alleges that Global recruited foreign nationals under the U.S. Department of Labor H-2A guest worker program to work at farms in the United States, including farms owned by the Farm Defendants. The EEOC alleges that Global used recruiters in Thailand to recruit Thai workers, and required them to pay substantial recruitment fees to be employed by Global. Id. ¶ 105. The EEOC further alleges that Global knew that the Claimants were impoverished and would have to borrow money, pledging family land as collateral, in order to pay the recruitment fees. Id. Global allegedly "harassed and intimidated the Claimants on a regular basis" and "regularly threatened the Claimants with deportation, arrest, suspension, and/or physical violence." Id. ¶¶ 108-109. According to the EEOC, Global "unlawfully confiscated the Claimants' identification documents" and "subjected the Claimants to uninhabitable housing, insufficient food and kitchen facilities; inadequate pay; significant gaps in work; visa and labor certification violations; suspension, deportation and/or physical violence." Id. ¶ 111. These "intolerable working conditions . . . resulted in constructive discharge." Id. ¶ 114. The EEOC

claims that these conditions created a hostile work environment and that the Claimants were subject to these conditions because of their national origin and race. Id. ¶¶ 625, 646. The EEOC also alleges that when Claimants complained of the unlawful employment practices, Global subjected them to "adverse employment actions including without limitation, discipline, transfers, denial of work, threats, harassment, denial of transportation and food, and a hostile work environment." Id. ¶ 678. As a result of this alleged misconduct, the EEOC claims that Global violated Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3. Id. ¶¶ 625, 646, 663, 677. The EEOC alleges that each of the Farm Defendants are joint employers with Global and jointly controlled the terms and conditions of employment of the Claimants. Id. ¶¶ 7-61. The EEOC alleges that each of the Farm Defendants knew or should have known about Global's alleged misconduct and/or engaged in their own discriminatory misconduct toward Claimants. Id. ¶¶ 7-61, 132-621.

## DISCUSSION

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [or] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). However, under Rule 26(c)(1), "[t]he court may, for good cause, issue an order

to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c) confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); see also Veterans for Common Sense v. Shinseki, 644 F.3d 845, 888 (9th Cir. 2011) ("'[B]road discretion is vested in the trial court to permit or deny discovery.'") (quoting Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002)). The burden is on the party seeking the order to "show good cause" by demonstrating harm or prejudice that will result from the discovery. See Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002). "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." Id. at 1211; see also In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417, 424 (9th Cir. 2011).

      Here, the EEOC asks the Court to enter a protective order to prevent Defendants from seeking:

      I. Discovery regarding information directly related to the Claimants' immigration status, including the Claimants' immigration status after they ceased working for Defendants,

passport numbers, visa numbers, other immigration document numbers, and social security numbers.[2]  ECF No. 402-1 at 1.

II.  Discovery regarding information that "could suggest one's immigration status," including Claimants' employment experience after they ceased working for Defendants, financial account numbers, marital status, educational background, date of birth, prior criminal convictions in another country, any social relationships and/or living arrangements, prior legal experience, other names used, and duration of residence in the United States.  ECF No. 402-1 at 14.

### I. Information Directly Related to Immigration Status

The EEOC asks the Court to prohibit Defendants from seeking discovery regarding information directly related to the Claimants' immigration status.  Specifically, the EEOC seeks a protective order prohibiting Defendants from requesting discovery related to the Claimants' immigration status after they ceased working for Defendants, passport numbers, visa numbers, other immigration document numbers, and social security numbers.  ECF No. 402-1 at 1.  As discussed in detail below, the Court GRANTS the Motion to the extent it requests protection for these categories of information related directly to immigration status.

---

[2] The EEOC's Motion does not seek protection for information related to the Claimants' immigration status during the time that the Claimants worked for Defendants.  See ECF No. 402-1 at 2-3.

### A. The Harm of Disclosure

The EEOC asserts that the disclosure of immigration-related information is highly prejudicial and would have a chilling effect. Mem. in Supp. of Mot. at 2-3. In support of its argument, the EEOC relies on Rivera v. Nibco, Inc., 364 F.3d 1057 (9th Cir. 2004), *cert. denied*, 544 U.S. 905 (2005). In Rivera, the Ninth Circuit upheld the lower court's entry of a protective order prohibiting discovery regarding the plaintiffs' immigration status based on the substantial burden that such discovery would place on the plaintiffs and on the public. 364 F.3d at 1074-75. The Court finds that the Ninth Circuit's decision in Rivera is controlling.

In Rivera, the court discussed in detail the potential harm that would result if Title VII plaintiffs were asked to disclose information related to their immigration status during discovery. Id. at 1064. The court held that "discovery of each plaintiff's immigration status constitutes a substantial burden, both on the plaintiffs themselves and on the public interest in enforcing Title VII." Id. at 1066. In reaching its conclusion, the Ninth Circuit considered the harm of disclosure of immigration status on both undocumented and documented workers. Id. at 1065. Specifically, the court stated that "[g]ranting employers the right to inquire into workers' immigration status in cases like this would allow them to raise implicitly the

7

threat of deportation and criminal prosecution every time a worker, documented or undocumented, reports illegal practices or files a Title VII action." Id. The Ninth Circuit recognized that "[d]ocumented workers may fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family or friends; similarly, new legal residents or citizens may feel intimidated by the prospect of having their immigration history examined in a public proceeding. Any of these individuals, failing to understand the relationship between their litigation and immigration status, might choose to forego civil rights litigation." Id. The court rejected the defendants' proposal to limit the disclosure of the plaintiffs' immigration status, stating that such limitation "does not eliminate the substantial risk of chilling the rights of these and future plaintiffs." Id. at 1065 n.5. The court held that "[t]he chilling effect such discovery could have on the bringing of civil rights actions unacceptably burdens the public interest." Id. at 1065.

Here, if Defendants were allowed to seek discovery regarding the Claimants' immigration status after they ceased working for the Defendants, the Claimants may fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family. Additionally, the Claimants may feel intimidated by the prospect of having their immigration history examined in a public proceeding. As

the Ninth Circuit recognized in Rivera, this potential chilling effect unacceptably burdens the public interest in enforcing Title VII.  Id.  The Court is unpersuaded by the Farm Defendants' arguments that Rivera is inapplicable because it involved undocumented workers because, as noted above, the Ninth Circuit discussed the harm such discovery would impose on documented workers as well.  See ECF No. 432 at 20-21; ECF No. 440 at 17. Additionally, as the EEOC asserts in its Reply, some of the Claimants may be undocumented.  See ECF No. 447 at 6-7; ECF No. 450 at 6; ECF No. 451 at 12.  The Court is also unpersuaded by the Farm Defendants' argument that various public statements regarding the Claimants' immigration status lessens the harm of disclosure.  ECF No. 437 at 6-7, 12; ECF No. 438 at 7-8; ECF No. 440 at 7-12.  These general comments were made by attorneys to the media and are not specific to any Claimant in this action. General comments that some of the Claimants may seek to stay in the United States do not negate the unacceptable chilling effect on the bringing of civil rights actions that the Ninth Circuit recognized in Rivera if employers were permitted to use the discovery process to inquire into workers' immigration status. See Rivera, 364 F.3d at 1065 (noting that permitting such discovery would have an unacceptable chilling effect on the bringing of civil rights actions, which would result in "countless acts of illegal and reprehensible conduct" going unreported).  Finally, the Court rejects the Farm Defendants'

argument that a limitation on the disclosure of immigration information would be sufficient to protect the Claimants from any purported harm. See ECF No. 434 at 31-34; ECF No. 437 at 12-13; ECF No. 440 at 23. As the court held in Rivera, such a limitation "does not eliminate the substantial risk of chilling the rights of these and future plaintiffs." Id. at 1065 n.5. The Court finds that the EEOC has satisfied its burden to demonstrate that a particularized harm will result from allowing discovery into the Claimants' immigration status after the Claimants ceased working for Defendants.

### B. Balancing of Interests

"If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." Phillips, 307 F.3d at 1211; see also Fed. R. Civ. P. 26(c); Rivera, 364 F.3d at 1066. The Farm Defendants assert three main arguments regarding their interest in the Claimants' immigration status information. First, the Farm Defendants assert that the information the EEOC seeks to protect is relevant to defenses to the EEOC's allegations. Second, the Farm Defendants assert that immigration status information is relevant to the EEOC's demand for damages. Third, the Farm Defendants assert that immigration status information is relevant to the Claimants' credibility.

### 1. Defense of the EEOC's Allegations

The Farm Defendants assert that the EEOC has placed the immigration status of the Claimants at issue in this litigation, therefore the Defendants should be able to seek discovery regarding the Claimants' immigration status. See ECF No. 432 at 16; ECF No. 434 at 16-23. The Court agrees that the Claimants' immigration status as H-2A workers during their employment with Defendants has been placed at issue by the allegations in the Third Amended Complaint; however, as noted above, the EEOC does not seek protection of that information. Rather, the protective order requested prohibits discovery related to the Claimants' immigration status after they stopped working for Defendants. The only allegations identified by the Farm Defendants that are possibly relevant to the Claimants' immigration status after they stopped working for Defendants are the allegations regarding constructive discharge. The Farm Defendants argue that they need to obtain information regarding the Claimants' immigration status after their employment at the farms ended so that they can ascertain some of the Claimants' "true reasons for abandoning the farms" as it relates to the EEOC's allegations of constructive discharge. ECF No. 434 at 18-19; see also ECF No. 438 at 5-13. The Farm Defendants assert that some of the Claimants may have been motivated to leave the farms because their immigration

status as H-2A workers was ending. ECF No. 438 at 7. Given the EEOC's allegations regarding constructive discharge, the Court agrees that Defendants should be allowed to inquire into the Claimants' motivations for leaving the farms. However, any inquiry into the Claimants' motivations for leaving the farms can be phrased in a way that does not reference their immigration status after leaving the farms. Accordingly, the Court finds that the interest in obtaining discovery related to the Claimants' immigration status after they ceased working for Defendants for purposes of challenging the EEOC's allegations of constructive discharge is outweighed by the possible harm and chilling effect that any such discovery would have on the Claimants and on the enforcement of Title VII claims.

### 2. Damages

The Farm Defendants argue that the Claimants' immigration status after they ceased working for Defendants is relevant to the issue of damages. Specifically, the Farm Defendants argue that the Claimants' immigration status is directly relevant to the EEOC's request for back pay, reinstatement, emotional pain and suffering, and the defense of failure to mitigate. See, e.g., ECF No. 432 at 17-18; ECF No. 434 at 23-28; ECF No. 437 at 9-10; ECF No. 438 at 14-17; ECF No. 440 at 19-20. In reply, the EEOC asserts that the damages it seeks in this action are limited to the time period that the

Claimants worked for Defendants.  See ECF No. 447 at 4-5; ECF No. 448 at 3-6; ECF No. 449 at 4-5, 13; ECF No. 450 at 10-11; ECF No. 451 at 3-6, 10-11.  Specifically, the EEOC states that it "is not seeking reinstatement, front pay, or pecuniary damages after the Thai Claimants left the farm."  ECF No. 451 at 10.  The EEOC states that it only "seeks punitive damages, compensatory damages, and out-of-pocket losses for [the Claimants'] employment at [the farms].  The compensatory losses for emotional distress are for 'garden variety' pain and suffering which occurred at the time of the Claimants' employment" at the farms.  ECF No. 451 at 10-11.  "The EEOC seeks backpay for work performed at [the farms] but unpaid.  Examples of out-of-pocket losses include improper recruitment fees and unreimbursed travel expenses and fees associated with their H-2A guestworker visas to work at [the farms]."  Id. at 11.

Based on the representations of the EEOC regarding the scope of the damages that it is seeking in this action, it does not appear that the Claimants' immigration status after they ceased working for Defendants is relevant to this action.  Accordingly, the potential harm that the Claimants and the public would suffer if discovery is allowed into the Claimants' immigration status after they ceased working for Defendants outweighs any interest that the Defendants have in this information.  However, this determination is based on the representations of the EEOC in its briefing for this Motion.  As

noted by the Farm Defendants, the Third Amended Complaint contains a broad request for damages and the EEOC has not amended its damages request or agreed to stipulate to such limitations. See ECF No. 263 at ¶¶ BB-BBB. The Court may revisit this issue if the EEOC does not formally amend its damages disclosures or the damages requested in the Third Amended Complaint as outlined in its briefing or if the EEOC otherwise attempts to pursue damages for any period of time after the Claimants ceased working for Defendants. Given the EEOC's representations regarding the narrow scope of the damages sought, the harm that discovery into the Claimants' immigration status after they ceased working for Defendants would cause substantially outweighs the minimal potential relevance of such discovery to the issue of damages.

### 3. Credibility

The Farm Defendants assert that they need to know the immigration status of the Claimants after the Claimants stopped working for Defendants to challenge the Claimants' credibility. Specifically, the Farm Defendants argue that information that the Claimants' may have provided on immigration applications regarding trafficking, discrimination, or retaliation in order to obtain T or U nonimmigrant status is directly relevant to the Claimants' motive, bias, and prejudice in this action. See ECF No. 432 at 12; ECF No. 434 at 28; ECF No. 440 at 12-19. T and U nonimmigrant status is available to victims of human trafficking

and for crime victims who cooperate with law enforcement. 8 U.S.C. § 1101(a)(15)(T) and (U). The Farm Defendants assert that the statements made by Claimants on their immigration applications regarding working conditions at the farms may be inconsistent with statements that Claimants will make in this action. ECF No. 437 at 9; ECF No. 438 at 11-12; ECF No. 440 at 15. The Farm Defendants also assert that whether or not a Claimant has been granted a T or U visa is probative because it may demonstrate that a Claimant had incentive to falsify or overstate allegations of discrimination and participate in this litigation in order to obtain T or U nonimmigrant status. ECF No. 432 at 12-16, 22-24; ECF No. 434 at 30; ECF No. 437 at 9; ECF No. 438 at 12; ECF No. 440 at 16.

Although such information may be relevant to test the Claimants' credibility, at this early stage in the discovery process, the Court finds that the potential chilling and prejudicial effect of disclosure outweighs the potential value that immigration status information might hold for impeachment purposes. As other courts that have examined this issue have observed, "a witness's credibility is always at issue and may be tested in a variety of ways without imposing an undue burden on a party." Avila-Blum v. Casa De Cambino Delgado, Inc., 236 F.R.D. 190 (S.D.N.Y. 2006); see also Galaviz-Zamora v. Brady Farms, Inc., 230 F.R.D. 499, 502 (W.D. Mich. 2005)(holding that "the damage and prejudice which would result to Plaintiffs if

discovery into their immigration status is permitted far outweighs whatever minimal legitimate value such material holds for Defendants" for purposes of credibility); De La O v. Arnold-Williams, Nos. CV-04-0192-EFS, CV-05-0280-EFS, 2006 WL 6494873, at *2 (E.D. Wash. Oct. 20, 2006) (holding that "any relevance the Plaintiffs' immigration status might have as to their credibility is outweighed by the damage and prejudice to Plaintiffs if disclosure was required").  The potential chilling effect that an unlimited exploration into the immigration status of each of the Claimants would have significantly outweighs the benefit of the information that the Defendants may obtain related to credibility.  See Rengifo v. Erevos Enterprises, Inc., No. 06 CV 4266, 2007 WL 894376, at *1 (S.D.N.Y. Mar. 20, 2007)("the opportunity to test the credibility of a party . . . does not outweigh the chilling effect that disclosure of immigration status has on employees seeking to enforce their rights").

       The Court is not persuaded by the authority cited by the Farm Defendants.  The cases cited by the Farm Defendants do not contain any analysis to support their determinations that the probative value of discovery into the plaintiffs' immigration status for purposes of credibility outweighed any prejudice that may be caused by the disclosure.  See, e.g., Catalan v. Vermillion Ranch ltd. P'ship, Civil Action No. 06-cv-01043-WYD-MJW, 2007 WL 951781, at *2 (D. Colo. Mar. 28, 2007); Camayo v. John Peroulis & Sons Sheep, Inc., Civil Action No. 10-cv-00772-

MSK-MJW, 2012 U.S. Dist. LEXIS 65494, at *5-*6 (D. Colo. May 10, 2012). Similarly, the court's decision in David v. Signal International, L.L.C. is inapplicable because in that case the parties had agreed on a compromise to provide the plaintiffs' affidavits attached to their T and U visa applications. See 735 F.Supp. 2d 440, 448 (E.D. La. 2010). No such compromise has been offered here. The Court finds that any relevance that the Claimants' immigration status information might have as to their credibility is outweighed by the damage and prejudice to the Claimants and the public if disclosure was required.

The Court GRANTS IN PART the EEOC's Motion and prohibits discovery regarding the following categories of information: Claimants' immigration status after they ceased working for Defendants, Claimants' passport numbers, visa numbers, other immigration document numbers, and social security numbers.[3]

**II. Information That Could Suggest the Claimants' Immigration Status**

The EEOC also asks the Court to prohibit Defendants from seeking information that it claims could also "suggest" the immigration status of the Claimants. Specifically, the EEOC requests that the protective order prohibit discovery related to

---

[3] The Court takes no position on the Farm Defendants conducting their own investigation into Claimants' immigration status. See Rivera, 364 F.3d at 1062.

the Claimants' "employment experience since leaving Defendants' employment, . . . financial account numbers, . . . marriage, educational background, date of birth, prior criminal convictions in another country, and social relationships and/or living arrangements, prior legal experience, other names used, and duration of residence in the United States." ECF No. 403, EEOC's Proposed Protective Order at 2.

Although the EEOC references a few cases in which courts prohibited disclosure of some additional information, the EEOC does not provide authority to support its argument that any information that could "suggest" the immigration status of the Claimants should be prohibited from discovery. See, e.g., ECF No. 450 at 11-14. In fact, the district court in Rivera allowed discovery "concerning the plaintiffs' places of marriage, educational background, current and past employment, damages, date of birth, and criminal convictions." Rivera, 364 F.3d at 1062. Additionally, other courts have allowed discovery into topics that may suggest one's immigration status. See, e.g., Perez-Farias v. Global Horizons, Inc., No. CV-05-3061-MWL, 2007 WL 1412796, at *3 and n.3 (E.D. Wash. May 10, 2007) (allowing discovery regarding plaintiffs' places of marriage, educational background, current and past employment, damages, date of birth, and criminal convictions); EEOC v. Global Horizons, Inc., No. CV-11-3045-EFS, 2012 WL 5986418, at *5 (E.D. Wash. Nov. 29, 2012) (allowing discovery into the claimants' marital status, other

18

names used, and social and business relationships).  The Court finds that the EEOC's request to prohibit all discovery into these categories of information is too broad.  The EEOC has not met its burden to justify a complete prohibition of discovery into these areas.  The Court DENIES the Motion to the extent it requests that Defendants be prohibited from requesting discovery on these topics.  However, a limitation on the disclosure of any information obtained in discovery on these topics is appropriate.  Any information obtained in discovery regarding the Claimants' employment experience since leaving Defendants' employment, financial account numbers, marriage, educational background, date of birth, prior criminal convictions in another country, social relationships and/or living arrangements, prior legal experience, other names used, and duration of residence in the United States shall be used by the party or parties to whom the information is produced solely for the purpose of this case.

## CONCLUSION

In accordance with the foregoing, the Court GRANTS IN PART AND DENIES IN PART the EEOC's Motion for Protective Order as follows:

(1) The Court prohibits discovery regarding the following categories of information:  Claimants' immigration status after they ceased working for Defendants, Claimants' passport numbers, visa numbers, other immigration document numbers, and social security numbers.

(2) Discovery is allowed regarding the Claimants' employment experience since leaving Defendants' employment, financial account numbers, marriage, educational background, date of birth, prior criminal convictions in another country, and social relationships and/or living arrangements, prior legal experience, other names used, and duration of residence in the United States. Any information obtained in discovery on these topics shall be used by the party or parties to whom the information is produced solely for the purpose of this case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, DECEMBER 20, 2012.



Richard L. Puglisi
United States Magistrate Judge

**E.E.O.C. v. GLOBAL HORIZONS, INC., ET AL.**, CIVIL NO. 11-00257 LEK-RLP, ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER RE: IMMIGRATION STATUS, AND INFORMATION RELATED TO IMMIGRATION STATUS